**18**

592 P.2d 430

UNIVERSITY OF UTAH HOSPITAL AND MEDICAL CENTER, a Licensed Hospital, Joe Chandler and Carolyn Chandler, on behalf of baby Boy Chandler, now Deceased, and Blake Chandler, an indigent infant, Plaintiffs-Appellants,

v.

Tim ERIKSEN, Clerk, James A. Leese, Chairman of the Board, Wayne Hall and Elmer Terry, members of the Board of County Commissioners, Bannock County, Defendants-Respondents.

No. 12089.

Supreme Court of Idaho.

March 16, 1979.

Dean Williams of Kerr, Williams & Clarke, Blackfoot, for plaintiffs-appellants.

Garth S. Pincock, Pros. Atty., for Bannock County, Pocatello, for defendants-respondents.

Before SHEPARD, C. J., McFADDEN, DONALDSON and BISTLINE, JJ. and SCOGGIN, J., Pro Tem.

PER CURIAM.

Respondent, Board of County Commissioners of Bannock County, in its answer filed to the I.C. § 31–3505 appeal of the hospital and the Chandlers, specifically *admitted* the following allegations set forth in the Chandler-Hospital § 31-3404 verified application for a certification of medical indigency:

1. Joe Chandler and Carolyn Ruth Chandler, husband and wife, are residents of the County of Bannock, State of Idaho, their address being 200 Stuart St., Chubbuck, Bannock County, Idaho.

2. That on the 7th day of August, 1974, Carolyn gave birth to twin boys who were premature and suffered from undeveloped respiratory systems. That the twin boys required emergency medical care and treatment and were rushed to the University of Utah Hospital and Medical Center in Salt Lake City, Utah on the 8th day of August, 1974, where they received intensive care and treatment. One child died on the 9th day of August, 1974, and the other child, Blake Chandler, remained in the hospital under intensive care and treatment until the 26th day of October, 1974.

3. That the University of Utah Hospital and Medical Center in Salt Lake City, Utah is a licensed Hospital.

4. That the services rendered and performed by said hospital were and are of an emergency nature necessary to save the life of the infant and to alleviate illness or injury and if untreated would have caused death.

5. That due to the emergency that existed the Certificate referred to in Chapter 34 [of Title 31] of the Idaho Code could not be obtained previous to the services being rendered.

6. That your applicants hereby apply for said Certificate as provided in Idaho Code 31–3405 and attach hereto and make a part of this application the affidavit of Joe Chandler in the form set out in Idaho Code 31–3404.

7. Attached hereto and made a part of this application is a statement from the University of Utah Hospital showing an itemization of the charges totaling $14,-101.42 as of the 31st day of August, 1974.

An eighth allegation, specifically *denied* by the Board of County Commissioners was that:

8. The infant Blake Chandler and his parents are medically indigent persons and eligible for assistance as medically indigent persons as provided in the Idaho Code Section 31-Chapter 34 and 35.

The affidavit of Joe Chandler attached to the application identified him as a 23 year resident of Chubbuck, in Bannock County (23 years also being his age), who worked for Walker Monument in Pocatello, with average take-home pay of $452 monthly. He owned a home valued at $25,000, with $23,500 owing on a mortgage, payable at $257 per month. His listed debts other than the $14,000 obligation to University of Utah Hospital totaled just under $2,000. He showed a monthly budget of expenditures in excess of his net income. He showed a schedule for reduction of his creditors' accounts by paying monthly $25 to Block's Clothing Store, $20 to the Children's Clinic, and $10 each to Idaho Bank & Trust, St. Anthony Hospital, Bannock Memorial Hospital, Dr. Jones, Dr. Berkley, Montgomery Ward, and Parrish legal firm. Other than the mortgaged house at Chubbuck, he owned used furniture and appliances valued at under $2,000.

The board, two days after answering, moved for a summary judgment on the grounds that there were no factual issues, and on the basis that as a matter of law the Chandlers were not "medically indigent." Attached to the motion was a supporting affidavit of a county employee saying only that the application was rejected on the basis of a Board of Commissioners' decision that Chandler was not medically indigent.

A counter affidavit of Joe Chandler was submitted. Generally it was but a restatement of his affidavit attached to the application. He again showed a take-home pay averaging $452 and living expenses in ·excess of that. This affidavit detailed the living expenses, but did not mention his schedule for paying the local small creditors. It concluded with the statement that:

Your affiant herein does not own assets nor does he have an average monthly income from all sources from which he can reasonably pay the amount incurred for such hospitalization as was necessary at the University of Utah hospital.

The district court, upon hearing the motion issued a written memorandum decision favorable to the board, making the following rulings:

It appears from the record, files, affidavits and attachments that there are no genuine issues of material fact.

It further appears that the University of Utah Hospital rendered services for which they should be compensated. However, this Court determines, as a matter of law, that the parties, Chandler, are not medically indigent. To so hold would make every person who elects to pay obligations other than medical bills, medically indigent. This Court is not so inclined to hold. The undisputed facts show that Mr. Chandler would rather pay Blocks, Parrish Co., Montgomery Ward, other doctors, other hospitals and Idaho Bank & Trust Company rather than make a payment to the University of Utah Medical Hospital. This does not make him medically indigent, and the Court so determines as a matter of law.

We hold that the district court erred in utilizing that particular standard for determining Chandlers' medical indigency. In *University of Utah Hospital and Medical Center, et al., v. Bethke, et al.,* 98 Idaho 876, 574 P.2d 1354 (1978) we held that the dis-

trict court, and the county clerk as well, in making a determination of medical indigency are required to apply the legislative definition of that term. The summary judgment is reversed and the cause remanded for further proceedings in which the trial court will determine at trial whether or not, as *a matter of fact*, the Chandlers were "medically indigent," giving proper regard to the provisions of I.C. § 31–3502(1).

Costs to appellants.