981 P.2d 242

**BONNER GENERAL HOSPITAL (re: Jason Todd Foy), Petitioner–Respondent,**

v.

**BONNER COUNTY, Respondent–Appellant.**

No. 24369.

Supreme Court of Idaho, Coeur d'Alene, April 1999 Term.

May 28, 1999.

8

John R. Topp, Sandpoint, argued for appellant.

Cooke, Lamanna, Smith, Priest River, for respondent. Thomas E. Cooke argued.

WALTERS, Justice.

This is a medical indigency case. When Bonner County denied Jason Foy's medical indigency application, the district court reversed the County's order on appeal. We concur with the district court's decision and hold that the County's determination was not supported by substantial evidence, and was arbitrary, capricious and an abuse of discretion.

## BACKGROUND AND PROCEDURAL HISTORY

Nineteen-year-old Jason Foy broke his right femur while skiing at Schweitzer Mountain. Foy was treated at Bonner General Hospital (BGH) where he incurred medical expenses of $14,675.55. Foy had recently dropped out of high school, had virtually no income, a sketchy employment history, no non-exempt assets, and no medical insurance. At the time of the accident, he was living in a VW van that was in the process of being repossessed.

Through BGH, Foy filed a medical indigency application with Bonner County on December 14, 1996. Bonner County initially denied the application on December 17, in part because Foy had not purchased health insurance before the accident. The County stated "[Foy] chose instead to purchase a car, etc.; failed to exercise personal responsibility by quitting jobs and failing to make plans for medical insurance after quitting job and failing to attend school." Following a request for reconsideration, the County again denied Foy's application, in part because "[Foy] made choices that left him uninsured; while employed did not obtain medical insurance; instead chose to make other purchases." BGH appealed the decision to the County Commissioners. The Commissioners held a hearing and made the following findings of fact:

3. The Petitioner presented evidence that he has had several jobs for which he was either fired or quit. However, Petitioner indicates that he is currently employed with a full-time job earning approximately $4.25 per hour.

4. It is the finding of the Board that Petitioner has the ability to make payments to retire his indebtedness to Bonner General Hospital within a three (3) year period.

5. Further, the Board finds that Petitioner has used most of his earnings prior to receiving his current full-time job of $3,126.00 for discretionary things such as purchasing bicycles, racing at bicycle races and paying for parts and repairs for his bicycle.

The Commission incorporated its findings of fact into conclusions of law. Two of those conclusions are as follows:

1. Petitioner, Jason Todd Foy, has the ability to retire his outstanding debt with the health care providers within three (3) years based upon his income.

2. The Board concludes that pursuant to *Application of Ackerman,* 127 Idaho 495, 903 P.2d 84 (1995), the patient has debts and expenditures for his hobbies, specifically bicycle racing, to hang out with friends which would allow him available resources should he apply his resources to retire his outstanding medical debt within a three (3) year period.

BGH appealed to the district court. The district court reversed, finding that the Commissioners' determination that Foy had sufficient resources to retire the medical debt within three years was not supported by substantial and competent evidence and was arbitrary and capricious.

Bonner County appealed. We address the following issues on appeal:

I. Can the Board of County Commissioners rely on Foy's "lifestyle choices" as defined in *Application of Ackerman,* 127 Idaho 495, 903 P.2d 84 (1995), as a basis for denial in this case?

II. Is the County's denial of Foy's application supported by substantial and competent evidence?

III. Based on the record, should the district court have remanded this matter to the Board of County Commissioners for further findings?

## STANDARD OF REVIEW

█ The denial of an application for indigency benefits is reviewed under the Administrative Procedure Act. *Application of Ackerman,* 127 Idaho 495, 903 P.2d 84 (1995). A reviewing court may not substitute its judgment for that of the administrative agency on questions of fact. *Id.* This Court will affirm the County's decision unless it finds that the decision is

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) not supported by substantial evidence on the record as a whole; or

(e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67–5279.

█ This Court independently reviews the agency's decision. We give serious consideration to the district court's decision, but review the matter as if the case were directly appealed from the agency. *Ackerman,* at 497, 903 P.2d at 86.

## DISCUSSION

### I. Lifestyle choices

█ The Commissioners denied Foy's indigency application because they found that he had the ability to pay off his outstanding medical debt within three years as provided by I.C. § 31–3502(13). The Commissioners based this conclusion upon a finding that Foy spent what little income he did have on hobbies like bicycle racing and hanging out with friends. Although the Commissioners made no specific findings of fact or conclusions of law regarding insurance, the County now argues, as it did in its initial denial, that the decision to deny Foy's application was also partially based on Foy's decision not to purchase insurance before the accident. According to the County, Foy's current expenditures and his decision not to purchase insurance before the accident constitute "lifestyle choices" under this Court's decision in *Ackerman.* The County also relies upon the legislature's declaration of purpose regarding insurance found in I.C. § 31–3501. We find no support for the County's position in either *Ackerman* or § 31–3501.

We first note that there is no statutory authority requiring the purchase of insurance in order to qualify for medical indigency. The legislature has determined that:

It is the policy of this State that each person, to the maximum extent possible, is responsible for his or her own medical care

and to that end, shall be encouraged to purchase his or her own medical insurance with coverage sufficient to prevent them from needing to request assistance pursuant to this chapter. *However, in order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of persons in this state, and in the case of medically indigent persons, to provide for the payment thereof, the respective counties of this state and the administrator shall have the duties and powers as hereinafter provided.*

I.C. § 31–3501 (emphasis added). The language of the statute is merely hortatory; it does not purport to require the purchase of insurance in order to qualify as medically indigent. Moreover, the lack of insurance was not meant as a per se bar to assistance under the medical indigency statutes. A medical indigency statute would hardly be necessary at all if only those with insurance could qualify.

Idaho Code § 31–3503(1), on the other hand, is mandatory. It provides that counties shall:

Care for and maintain the medically indigent resident of their counties as provided in this chapter up to ten thousand dollars ($10,000) per claim in the aggregate over a twelve (12) month period.

I.C. § 31–3503(1). " 'Medically indigent' means any person who is in need of necessary medical services and who ... does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services." I.C. § 31–3502(1). Idaho Code § 31–3502 also provides a definition of resources:

"Resources" means all property, whether tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to, all forms of public assistance, crime victim's compensation, worker's compensation, veterans benefits, medicaid, medicare, and any other property from any source for which an applicant and/or an obligated person may be eligible or in which he or she may have an interest. Resources shall include the ability of an applicant and obligated persons to pay for necessary medical

services over a period of up to three (3) years.

I.C. § 31–3502(17).

In *Ackerman,* this Court considered when a resource may be considered available under § 31–3502(1). Ackerman incurred $8,140.85 in medical bills. He had income in excess of $3,000 per month with his housing and utilities provided by his employer, and had other non-exempt assets available. He argued that he could not pay his medical bills, however, because he had $2,078 in monthly expenditures for a TV satellite subscription, cellular mobile phone service, car and motorcycle payments, credit card debt, and other loans. This Court upheld the Commission's finding that Ackerman actually had resources sufficient to retire his medical bills, and determined that they were available to pay his medical bills despite the fact that he might have wanted to use the resources to pay off credit card debt and for other discretionary items. This Court also stated that "the policy behind providing medical indigency benefits is to assist people who are 'truly needy' with medical expenses, not necessarily to assist people *who have the financial ability to pay* were it not for their voluntary abuse of credit cards or the lifestyle choices they make." *Ackerman,* at 498, 903 P.2d at 87 (emphasis added).

■ In this case, the county has not made the initial showing required under §§ 31–3502(1) and (17) that Foy actually has resources sufficient to retire his debt in three years. Foy's minimal income could not retire his medical debt within three years regardless of what "lifestyle choices" he might make. Without a showing that the resources are available, the question of expenditures and "lifestyle" discussed in *Ackerman* is simply not relevant.

■ The county attempts to impute resources to Foy by arguing that he had the ability to purchase insurance sufficient to cover his medical bills before the accident. However, the prior unrealized opportunity to purchase insurance does not constitute an available resource under Idaho Code § 31–3502(17). Foy's hypothetical opportunity to purchase insurance at an earlier time is not

actually a resource upon which Foy can now draw to pay his medical bills. Obviously, he cannot now take advantage of his previous opportunity to buy insurance for an accident that has already happened. The insurance relied upon by the County is purely imaginary; it does not in any way reflect Foy's actual current ability to retire his debt. Nothing in *Ackerman* supports the artificial implication of resources to an applicant based upon prior "lifestyle choices" that the County finds objectionable. Neither *Ackerman* nor the legislature's preference for purchasing medical insurance changes the fact that Foy did not purchase insurance, and does not currently have insurance available to pay the medical bills from his skiing accident.

Unlike Ackerman, Foy is unable to pay his medical bills because he does not make enough money, and he has no other resources available, not because he chooses to spend his money on discretionary items.

## II. The Commission's finding that Foy can pay his medical bills within three years is not supported by substantial and competent evidence.

■ The Commission found that "[Foy] has the ability to retire his outstanding debt with the health care providers within three (3) years based upon his income." This finding is not supported by substantial and competent evidence in the record.

The Commission's findings of fact indicate that Foy had just been hired at a new job earning $4.25 per hour and has a spotty employment record; and the record indicates that Foy has no non-exempt assets and no real prospects to increase his income in the near future. In the absence of insurance or some other resource upon which he can draw to pay his bills, the County's determination that Foy has the ability to retire a $14,675.55 debt in three years is not supportable. We hold that the Commission's findings of fact are not supported by substantial and competent evidence and the decision to deny Foy's application was arbitrary, capricious and an abuse of discretion.

## III. Idaho Code § 67–5279(2) does not require the district court to remand the case for further findings of fact.

■ Idaho Code § 67–5279 states that "if the agency action is not affirmed, it shall be set aside in whole or in part, and remanded for further proceedings as necessary." The County contends that the district court should have remanded this case to the Commissioners to make further findings of fact. However, there is no indication in the record that further findings of fact could be made from the paucity of evidence that would affect the outcome of this case. Consequently, we hold that no remand by the district court was necessary.

## CONCLUSION

The district court's decision reversing the County Commissioners' Order denying benefits to Foy is affirmed. No attorney fees have been requested, therefore costs, but not attorney fees, are awarded to respondent.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL, concur.