41 P.3d 215

**SACRED HEART MEDICAL CENTER, a Washington corporation, (regarding Monte S.), Petitioner–Appellant,**

v.

**KOOTENAI COUNTY COMMISSIONERS, Respondent.**

No. 26864.

Supreme Court of Idaho, Coeur d'Alene, Oct. 2001 Term.

Nov. 28, 2001.

Rehearing Denied Feb. 15, 2002.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for appellant. Michael B. Hague argued.

Erika B. Ellingsen, Coeur d'Alene, argued for respondent.

WALTERS, Justice.

This is a medical indigency case. The issue presented for review is whether all of

the outstanding bills of the applicant for county assistance, even those he has not been paying on, must be included in determining the applicant's available resources. The Board of Commissioners for Kootenai County excluded an unrelated debt owing to the same hospital which had provided the medical services and a loan from friends that the applicant had not been making payments on and determined that there was discretionary income available after the applicant's ordinary expenses, and concluded that the applicant was not medically indigent. On a petition by the hospital for judicial review, the district court upheld the Board's determination. We also affirm the Board's decision.

## FACTS AND PROCEDURES

Monte S., a resident of Kootenai County, applied for medical indigency benefits after he was admitted to Sacred Heart Medical Center (SHMC) in Spokane for treatment of suspected heart disease in June of 1999. The total medical bills incurred for his treatment was $13,737.85, of which $12,039.85 was owed to SHMC. Kootenai County denied the application, finding that the applicant had discretionary income sufficient to pay the subject medical bills within three years in accordance with I.C. § 31–3502.

At the hearing on the appeal from the County's denial of the indigency application, Kootenai County Assistance Officer, Marla Lewis, reported that the applicant had an income of $1,963.16 per month from Washington State Labor & Industries and monthly expenses totaling $1,424, leaving an excess of income over ordinary expenses of $538.73 per month. Lewis also calculated that the total medical bills from the June 1999 hospitalization, $13,737.85, could be paid by the applicant at the rate of $381 per month for 36 months, which would still leave the applicant with $157 per month for other expenses.

Monte S. testified to his monthly expenses, which included rent, electricity, sewer and garbage services, water and propane, food, sundries, automobile insurance, an automobile loan payment, and laundry. He also testified that he was spending $300 per month on counseling, which was to terminate in a couple of months and that the costs of

his prescriptions for medicine, which he did not fill because he was unable to afford them, totaled $300 per month. With regard to other outstanding obligations, Monte S. testified that he had a loan from friends that he tried to pay when he could, but the amount of the loan was not disclosed. He owed another large obligation to SHMC for unrelated services provided in June of 1990, September of 1997, and April, June and December of 1998, with a balance due the hospital of $19,476.34. Monte S. testified that he had not made any payments on those hospital bills.

Subsequent to the hearing, the Commissioners learned that the applicant's future medical bills for prescription drugs would be paid by the Veterans Administration. On February 4, 2000, the Commissioners entered findings of fact and conclusions of law. The Commissioners found the applicant's present income to be $1,963.16 and his monthly expenses to be $1,324.43, leaving him $638.73 available per month to apply toward the medical provider bills for which he had made application for assistance. The Commissioners concluded that Monte S. was not "medically indigent" as defined by I.C. § 31–3502(1), in that he had sufficient resources with which to pay the debt within a three-year period, pursuant to the definition of available resources set forth in I.C. § 31–3502(17). The Commissioners denied the application for assistance.

SHMC timely filed a petition for judicial review of the Commissioners' denial of the application. Because the facts of the case as found by the Commissioners were undisputed and supported by the record, the district court was presented only with a question of law. That question is whether all of the debts of an applicant must be considered by the Commissioners as a present expense regardless of whether the applicant actually is paying on that indebtedness.

The district court determined, consistent with the Commissioners' findings, that Monte S. "is capable of paying off the claimed medical expenses within a three-year period *and* making a regular payment in *some* amount toward his previously incurred medical ex-

penses." The district court relied on *Application of Ackerman,* 127 Idaho 495, 903 P.2d 84 (1995), for the proposition that counties are not required to subtract payments on all outstanding obligations such as credit card debt and other discretionary expenses. The district court distinguished this case from *Ackerman* in that the medical care that Monte S. had previously received was necessary and not the byproduct of a lifestyle choice, but the court nevertheless held that the prior medical care debt was an unsecured debt to be treated in the same manner as any other obligation.

The district court acknowledged that simply because an applicant was delinquent in making payments on an outstanding debt was not necessarily a sufficient reason to exclude such debts from the determination of a claimant's monthly expenses. Nevertheless, the district court affirmed the decision of the Commissioners, concluding that the Commissioners properly determined that the prior medical expenses and the unpaid loan to friends were obligations which were not required to be included in the calculation of the claimant's available resources.

SHMC has appealed from the district court's opinion on review of the Commissioners' action.

## ISSUES ON APPEAL

1. Did the Commissioners err in refusing to consider unpaid prior medical bills when determining whether the applicant had sufficient discretionary income to pay the medical bill for which the applicant sought medical indigency benefits?

2. Should SHMC receive an award of attorney fees at the district court level and on appeal?

## STANDARD OF REVIEW

The denial of an application for indigency benefits is reviewed under the Administrative Procedure Act, Idaho Code tit. 67, ch. 52. I.C. § 31–3505; *Bonner General Hospital v. Bonner County,* 133 Idaho 7, 981 P.2d 242 (1999). A reviewing court may not substitute its judgment for that of the administrative agency on questions of fact. *Appli-*

*cation of Ackerman,* 127 Idaho 495, 903 P.2d 84 (1995). Only if substantial rights of the appellant have been prejudiced may a reviewing court reverse the agency's decision or remand for further proceedings. *Id.;* I.C. § 67–5279(4). The substantial evidence rule requires the reviewing court to determine whether the agency's findings of fact are "reasonable." *Intermountain Health Care v. Board of County* Comm'rs, 107 Idaho 248, 253, 688 P.2d 260, 265 (1984). This Court independently reviews the agency's decision, albeit giving serious consideration to the district court's decision. *Bonner General Hospital,* 133 Idaho at 9, 981 P.2d at 244.

## DISCUSSION

### I.

Idaho Code § 31–3502(1) defines "medically indigent" as any person who is in need of necessary medical services and who does not have income and other resources available sufficient to pay for necessary medical services. To establish indigency, an applicant need not be completely destitute or devoid of any resources; all that is required is a showing that the person is unable to pay for necessary medical services. *Salinas v. Canyon County,* 117 Idaho 218, 786 P.2d 611 (Ct.App.1990). The determination of whether an applicant is medically indigent is a question of fact. *Intermountain Health Care v. Board of County Comm'rs,* 107 Idaho 248, 253, 688 P.2d 260, 265 (1984); *University of Utah Hospital and Medical Center v. Eriksen,* 100 Idaho 18, 592 P.2d 430 (1979).

In *Carpenter v. Twin Falls County,* 107 Idaho 575, 691 P.2d 1190 (1984), the record clearly demonstrated that Mr. Carpenter did not have income and resources available which would enable him to pay for the emergency medical services and bills incurred during his wife's terminal illness. *Id.* at 584, 691 P.2d at 1199. The Court considered the resources available to Carpenter, including his monthly wages as a farm laborer, the housing provided by his employer, his wife's Social Security disability income and the couple's assets of $1,000 in furniture and appliances and a 1978 Ford LTD automobile against which the Carpenters owed $4,000.

In addition to the couple's monthly expenses for food, fuel, clothing, insurance, utilities and transportation, the Court also considered the consumer debts and car loan, which the Carpenters paid each month. After assuming that Carpenter's income and his monthly living expenses would be equivalent to their values before Mrs. Carpenter's death, the Court upheld the district court's reversal of the Commissioners' decision finding that Carpenter was not a medically indigent person. *Id.* at 585, 691 P.2d at 1200.

■ Since the decision in *Carpenter*, this Court has provided an interpretation of I.C. § 31–3502(1), which explains when a resource is to be considered in determining an applicant's eligibility for assistance. To be available, a resource must have a positive value greater than its liabilities, encumbrances, and indebtedness, and must be readily convertible into cash. *Intermountain Health v. Board of County Comm'rs*, 109 Idaho 299, 303, 707 P.2d 410, 414 (1985). As used in I.C. § 31–3502(1), "available" has been held to denote "currently or immediately obtainable income or resources and a corresponding *present* ability to pay...." *University of Utah Hosp. And Medical Ctr. v. Twin Falls County*, 122 Idaho 1010, 1015, 842 P.2d 689, 694 (1992). More recently, in response to an argument that the applicant was indigent because he lacked a reserve of funds to pay off the incurred medical expenses and instead spent his income on other obligations, this Court held,

> We do not believe that the definition of "available" resources necessarily means the *present* ability to pay all medical expenses immediately. Under appellants' argument, Ackerman is indigent unless he has a reserve of enough funds to pay off the incurred expenses all at once. We do not believe this statement accurately reflects the law. Ackerman presently has the ability to pay off his medical expenses in a reasonable time.

*Application of Ackerman*, 127 Idaho at 497, 903 P.2d at 85 (emphasis in original). In the next legislative session following this Court's declaration in *Ackerman*, the legislature revised I.C. § 31–3502 and enacted I.C. § 31–3502(17), which provides that "[r]esources

shall include the ability of an applicant and obligated persons to pay for necessary medical services over a period of up to three (3) years." *See 1996 Idaho Sess. Laws*, ch. 410, p. 1357, sec. 3. This legislative change confirmed the Court's observation that an applicant is not indigent, for the purpose of obtaining assistance from the county to pay for medical services, if the applicant has the ability to satisfy the bill using his own assets and income over a prospective period of time, which the legislature set at a maximum of three years, or thirty-six months.

■ In *Ackerman*, this Court stated that it agreed with the determination of the Jefferson County Board of County Commissioners that Ackerman's credit-card debts were "non-judicial" obligations having no priority over the medical expenses for which assistance was being sought. 127 Idaho at 497–498, 903 P.2d at 86–87. The use of the term "non-judicial obligations" may have been misleading language when considered in the context of whether a claimant qualifies as a medical indigent person. A claimant's inability to meet outstanding obligations should not depend on whether those obligations might be characterized as "judicial" or "non-judicial" debts. There is no explanation in *Ackerman* as to what the Jefferson County Commissioners meant by "non-judicial" as a description of a debt. Perhaps the Commissioners meant a debt that had not been reduced to a judgment that could be enforced by a writ of execution. However, the nature of the debt—whether it be for living expenses or for frivolous, nonessential purchases made due to the "lifestyle choices" of the claimant (referred to in *Ackerman* )—would seem to be irrelevant if the debt is reduced to a judgment. Furthermore, describing a debt as a "judicial" obligation implies that the debt may be collected from the claimant involuntarily through the execution process, rather than paid upon by the claimant at such times or in such amounts as the claimant chooses within the means the claimant may have to discharge its obligations. Given the ambiguities relating to the use of the terms "judicial" and "non-judicial" as descriptive of obligations, we believe those terms should be discarded and not used by

counties when undertaking the determination of medical indigency applications. Instead, a county should focus on whether a particular debt in question was a current obligation necessary and reasonably incurred by the claimant as a living expense. Such a determination does not depend on how much the claimant may be paying on the debt nor whether the debt has been reduced to a judgment.

We recognize, as argued by SHMC, that the statute does not expressly address whether a county may disregard outstanding indebtedness in determining if an applicant is medically indigent. Whether the statute should be amended to include a provision in that regard is a legislative decision. Until such a change is made, we are limited to reviewing the action of the Board of Commissioners in the context of the statutory scheme as it appears in the code.

 In this case, the applicant's sole income is a disability benefit received from Washington State Labor & Industries. This income is sufficient to pay his monthly expenses, with some left over to pay other debts. However, the applicant has not paid on the previously incurred medical bills or on the outstanding debt to his friends, from the difference, which the County Commissioners computed as a surplus of $638.73 after monthly expenses. The surplus is more than adequate to allow satisfaction of the medical bills for which he sought county assistance within the three-year period prescribed in I.C. § 31–3502(17).

The evidence in the record is sufficient to support the Commissioners' factual determination that Monte S. was not indigent under the law, for the purpose of obtaining medical indigency benefits. This Court concludes that the denial of medical benefits was appropriate in this case.

## II.

SHMC requests an award for attorney fees, both at the district court level and on appeal. Because SHMC is not the prevailing party in this case, the request is denied.

## CONCLUSION

This Court affirms the decision of the Kootenai County Commissioners denying Monte S.'s application for medical benefits because he has income beyond his monthly expenses from which he is able to satisfy the medical bills for which the application for assistance was made, within the thirty-six month period allowed by I.C. § 31–3502. No attorney fees are awarded to the appellant.

Costs are awarded to the respondent, Kootenai County.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, CONCUR.