181 P.3d 456

**In the Matter of the Appeal of Graham S. Stafford.**

**Norma J. STAFFORD, Plaintiff–Appellant,**

v.

**IDAHO DEPARTMENT OF HEALTH & WELFARE, Defendant–Respondent.**

No. 33242.

Supreme Court of Idaho, Boise, January 2008 Term.

March 28, 2008.

Graham Law Office, Boise, for appellant. Peter Desler argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Mary Jo Beig argued.

J. JONES, Justice.

Norma Stafford appeals from the denial by the Department of Health and Welfare of her application for Medicaid benefits, made on behalf of her husband, Graham Stafford. The district court affirmed the Department's decision. We affirm.

## I.

The facts of this case are undisputed. On January 14, 2003, the Staffords established a revocable living trust (the Trust) and deeded their home to the Trust.[1] The Staffords are the primary beneficiaries of the Trust and there are six residual beneficiaries. On June 23, 2004, the Trust deeded the home to Mrs. Stafford, in her individual capacity.

On June 4, 2004, Mr. Stafford entered a long-term nursing care facility. Mrs. Stafford, on behalf of her husband, filed an application with the Department on July 29, 2004, for Medicaid nursing home care. Medicaid is an indigent health care program, and benefits are based on an applicant's income and resources. The Department performed an initial assessment to value the Staffords' assets as of the June 4 date. A second valuation was performed in July to determine Mr. Stafford's eligibility for nursing home assistance. The Department denied the application, finding that, based on the second valuation, the Staffords did not qualify for Medicaid assistance. Mrs. Stafford appeals that decision arguing (1) that the Department improperly failed to include the value of the home, which was then owned by the

---

1. The corpus of the Trust included assets in addition to the home. However, the home was the largest asset in the Trust, and is the only asset at issue in the present appeal.

Trust, in the initial resource assessment, and (2) that the Staffords met the resource limit by July 1, the eligibility determination date, by virtue of having deeded the home to Mrs. Stafford prior to that date.

When one spouse enters a nursing home, either spouse may request a resource assessment to determine the value of existing community or separate property owned by them as of the first day of institutionalization (here, June 4, 2004). IDAPA 16.03.05.736. For a married couple, the Department divides the value arrived at in the resource assessment by two. IDAPA 16.03.05.738. The non-institutionalized spouse is allowed to keep half of the couple's resources (up to a cap of $94,760) and the institutionalized spouse is allowed $2,000. IDAPA 16.03.05.201. The higher the initial resource assessment is, up to the $94,760 cap, the greater the amount of resources the non-institutionalized spouse is allowed to keep. IDAPA 16.03.05.201. If a couple is over-resourced as of the resource assessment date, they must "spend-down"—that is, reduce countable resources as permitted by Medicaid guidelines—their non-exempt assets by the eligibility date (the first day of the month in which an application for Medicaid assistance is made).

At first glance, it seems counter-intuitive that a prospective Medicaid applicant would desire to increase his or her countable resources. However, in the instant case, the Staffords sought to increase their resources by causing an exempt resource (the family home) to lose its exempt status by transferring it into the Trust. By doing so, the resource value allocated to Mrs. Stafford would be artificially increased. Mrs. Stafford would then be able to transform the family home back into an exempt asset before the eligibility date by acquiring the home back from the Trust. Essentially, this case presents the question of whether the Staffords found a loophole in the Medicaid program.

The Department initially determined that the Staffords owned total countable resources of $74,477, as of the resource assessment date. This did not include the value of the home, which was then owned by the

Trust. The Department allocated $36,224 to Mrs. Stafford as her half and $2,000 to Mr. Stafford. Therefore, according to the Department, the Staffords were allowed to keep $38,224 as resources and would have to "spend-down" to that amount by the eligibility date in order to be eligible for Medicaid. That is, the Staffords were over-resourced by $34,223, i.e. the difference between $72,447 and $38,224.

The Staffords contend the Department should have included the value of their home property, then owned by the Trust, in the initial resource assessment. Had that been done, the Staffords would have had countable resources of $245,147, thus increasing Mrs. Stafford's allowable share to the allowable maximum of $94,760. The Staffords further argue that once the home was deeded to Mrs. Stafford from the Trust, the value of the Trust was reduced and the home was converted into an exempt asset, thereby accomplishing a "spend down." Therefore, at the eligibility date, Mrs. Stafford owned countable resources in the amount of $72,447 (excluding the value of the house which was then an exempt asset), all of which was allowable without affecting Mr. Stafford's eligibility for Medicaid assistance. In essence, they contend that by artificially increasing their countable resources they effectively qualified for Medicaid without disposing of any property and by only legally re-characterizing the property under the regulations.

The Staffords requested a fair hearing by a hearing officer of the Department's initial determination. The hearing officer concluded that the Department erred in making the resource assessment. Rather than excluding the value of the Stafford home as a countable resource, the Department should have included it in the resource assessment. The hearing officer further found, however, that the conveyance of the home by the Trust to Mrs. Stafford, did not constitute a "spend-down" because no cash traded hands. Thus, despite the Trust's conveyance of the home and the consequent reduction in value of the Trust, the Staffords were still over-resourced and failed to qualify for Medicaid.

The Department rejected the hearing officer's finding that the home was a countable

resource. The Department stated that the Staffords did not have an "ownership interest" in the home at the time it was owned by the Trust and, therefore, it was not a countable resource on the assessment date. It also found that the conveyance of the home to Mrs. Stafford did not qualify as a "spend-down." The district court affirmed the Department's final order and the Staffords appeal to this Court.

## II.

The question we address on appeal is whether the Department correctly excluded the value of the home when making the resource assessment. Because we decide that the value of the home was properly excluded and because such conclusion is determinative of the appeal, we need not address other issues raised.

## A.

■ The denial of an application for Medicaid benefits is reviewed under the Administrative Procedure Act, Chapter 52, Title 67, Idaho Code. *Bonner Gen. Hosp. v. Bonner County*, 133 Idaho 7, 9, 981 P.2d 242, 244 (1999). This Court independently reviews the agency's decision. We give serious consideration to the district court's decision, but review the matter as if the case were directly appealed from the agency. *Id.* This Court will not substitute its judgment for that of the agency on questions of fact. *Id.* I.C. § 67–5279(3) provides:

> [T]he court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) not supported by substantial evidence on the record as a whole; or
>
> (e) arbitrary, capricious, or an abuse of discretion.

The agency action shall be affirmed unless substantial rights of the appellant are affected. I.C. § 67–5279(4).

■ Interpretation of a statute is an issue of law over which this Court exercises free review. *In Re Estate of Elliott*, 141 Idaho 177, 181, 108 P.3d 324, 328 (2005). Administrative regulations are subject to the same principles of statutory construction as statutes. *Mason v. Donnelly Club*, 135 Idaho 581, 586, 21 P.3d 903, 908 (2001). An agency's interpretation of its statutes is entitled to deference if (1) the agency is entrusted with the responsibility to administer the statute in question, (2) the agency's statutory construction is reasonable, (3) the statutory language does not treat the precise issue, and (4) any of the rationales underlying the rule of deference are present. *Pearl v. Board of Professional Discipline*, 137 Idaho 107, 113, 44 P.3d 1162, 1168 (2002).

## B.

■ The determination of this case turns upon whether the Staffords' home became a non-exempt resource when it was transferred into the Trust and thus should have been counted as a resource when the initial resource assessment was made. This, of course, depends on interpretation of the Department's rules. The rules are not particularly arranged in such a fashion that the proper interpretation is easy to discern. Because both the initial assessment valuation and the eligibility determination valuation use the same resource definitions, one would be inclined to assume that the trust provisions upon which the Staffords rely would apply at both valuation dates. One must go back and forth among the rules to determine which rule may or may not apply to either of the valuation dates. The use of subheadings or other directory guides would have been helpful in determining how to interpret these rules. However, by ferreting through the rules, one can reach the conclusion that the Department did—that the Staffords' home did not qualify as a resource on the assessment date. Since that is the linchpin of their case, they are not entitled to relief here.

In order to reach this conclusion, it is necessary to review some of the background of the Medicaid program. The federal Medicaid program was established in 1965.

"While it is often thought of as providing medical care only for the indigent, it also provides coverage for the aged 'whose income and resources are insufficient to meet the costs of necessary medical services' including nursing home care." *Cleary v. Waldman*, 167 F.3d 801, 805 (3rd Cir.1999); 42 U.S.C. § 1396, et seq. The Medicaid program is administered by the states on a matching-fund basis, with the lion's share of support coming from the federal government. The states do not get the matching funds without strings. As one might suspect, the states must meet certain requirements in order to obtain the federal funds. "Medicaid is a cooperative federal-state venture through with the states operate programs of their own design. These programs must, however, be consistent with federal standards and regulations." *Cleary* at 805.

I.C. § 56–202(b) provides the director of the Idaho Department of Health and Welfare with rulemaking authority to carry out various public assistance programs, including the Medicaid program. Recognizing the strong federal role in these programs, I.C. § 56–203(b) grants the Department power to "[c]ooperate with the federal government in carrying out the purposes of any federal acts pertaining to public assistance or welfare services ..." Subsection (g) of that section gives the Department power to "[d]efine persons entitled to medical assistance in such terms as will meet requirements for federal financial participation in medical assistance payments." Thus, both the federal government and the state government expect federal law to predominate in determining qualifications for receipt of Medicaid assistance.

■ Over the years, as the Medicaid program evolved from strictly an indigent assistance program to one that provided assistance to elderly persons who struggle to meet the cost of medical and nursing home care, steps were taken to keep those recipients from having to divest themselves of their home and other basic resources. As the Third Circuit noted in *Cleary*:

In order to be eligible for Medicaid, a person's available income and resources may not exceed certain limits. Persons seeking eligibility for Medicaid benefits must "spend down" their available assets to the prescribed limits before becoming eligible. 42 U.S.C. § 1396(a)(10). Prior to 1988, these eligibility rules forced couples to spend down the entirety of their resources in order for one of them to qualify for Medicaid. This resulted in the virtual impoverishment of the spouse who remained in the community.

In 1988, Congress enacted the MCCA [Medicare Catastrophic Coverage Act], H.R. 2470, 100th Cong. 1st Sess., 102 Stat. 683 (1988). The chief purpose of the MCCA was to end the "pauperization [of the community spouse] by assuring that [she] has a sufficient—but not excessive—amount of income and resources available" while the other spouse is institutionalized. H.R.Rep. No. 105(II), 1988 U.S.C.C.A.N. at 888. The goal of the MCCA was to provide sufficient income and resources for the community spouse while also ensuring that a fair share of the couple's resources were employed for the care of the institutionalized spouse. Through its Spousal Impoverishment Provisions, the MCCA set aside a protected level of income and resources for the community spouse. This amount is "protected" since it is not included when determining the institutionalized spouse's eligibility for Medicaid and it need not be "spent down" on the institutionalized spouse's care.

*Cleary* at 805.

The spousal impoverishment provisions of the MCCA provided rules for treatment of resources, including a definition of resources and rules for determining the amount of resources available to the institutionalized spouse. 42 U.S.C. § 1396r–5(c)(1) and (5). It is important to note that there are two points at which resources are considered—an initial assessment made at the request of either the husband or wife when one of the spouses is institutionalized, and a determination made to establish eligibility when an application for benefits is made. The assessment is made as of the date of entry into the nursing home. The initial assessment requires the state to assess and document the total value of the resources in which the couple has an ownership interest. 42 U.S.C.

§ 1396r–5(c)(1)(B). When either of the spouses applies for Medicaid assistance, an eligibility determination is made regarding the resources available to the institutionalized spouse. 42 U.S.C. § 1396r–5(c)(2). This valuation is made as of the first day of the month in which an application for assistance is made. The two valuation points are for the benefit of potential applicants because it gives them the ability to "spend down" assets, subject to strict guidelines, so that a couple having too much in the way of assets to qualify for coverage on the initial assessment date can lower the value of those assets in order to qualify as of the eligibility determination date.

42 U.S.C. § 1396r–5(c)(5)(A) states that the term "resources" does not include resources excluded under subsection (a) of 42 U.S.C. § 1382(b). That subsection excludes "the home (including the land that appertains thereto)" from a determination of the resources of an individual.

The federal Department of Health and Human Services has promulgated regulations to implement the spousal impoverishment provisions, including regulations defining a resource. 20 C.F.R. § 416.1201 defines a resource as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." Subsection (1) of the definition continues, "If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)." This regulation requires that the individual possess the "right, authority or power" to liquidate the real property.

With regard specifically to a home, the regulations provide:

In determining the resources of an individual (and spouse, if any) the following items shall be excluded:

(a) The home (including the land appertaining thereto) to the extent its value does not exceed [an amount not pertinent here].

20 C.F.R. § 416.1210. A specific regulation titled "[e]xclusion of the home", provides:

(a) Defined. A home is any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual's principal place of residence. This property includes the shelter in which an individual resides, the land upon which the shelter is located and related outbuildings.

(b) Homes not counted. We do not count a home regardless of its value.

20 C.F.R. § 416.1212.

The State has taken legislative and administrative action to implement the MCCA and its implementing regulations. Following passage of the MCCA, the director of the Department requested the Attorney General's opinion as to whether legislation was required to implement its provisions. The Attorney General responded:

While participation in the Medicaid program is voluntary, a state that chooses to participate must comply with all requirements imposed by the federal statutory provisions and by regulations promulgated by the Secretary of the U.S. Department of Health and Human Services....

The Medicare Catastrophic Coverage Act of 1988 ... requires certain income and resource protection for the "community" spouse of a nursing home resident receiving Medicaid assistance. The MCCA also contains new mandatory transfer of assets penalties and repeals all transfer of assets penalties under the Supplemental Security Income Program

Idaho Op. Atty. Gen. No. 89–3, at 2. The Attorney General advised the director that new implementing legislation was required for these MCCA provisions.

Several weeks after issuance of the Attorney General's opinion, the Legislature passed House Bill No. 117 in order to, as stated in the short title, "conform with section 303 of [the MCCA]." 1989 Idaho Sess. Laws, ch. 67, p. 107. The legislation amended I.C. § 56–209e to provide the resource protections referred to by the Attorney General and amended I.C. § 56–214 to include the new

mandatory transfer of asset penalties referenced by the Attorney General.

The state subsequently adopted rules to implement the MCCA, as required by the state implementing legislation, including the spousal impoverishment provisions. Rule 731 of the Medicaid eligibility rules acknowledges three methods for determining eligibility of an aged, blind or disabled married person but states that the Federal Spousal Impoverishment (FSI) method "takes precedence." IDAPA 16.03.05.731. Rule 735 states, specific to this case, that the FSI method "must be used to compute income and resources of a married long-term care participant, with a community spouse." IDAPA 16.03.05.735.

The Department's Rules 736–738 deal with the initial assessment. Consistent with 42 U.S.C. § 1396r–5(c)(1)(B), Rule 736 provides for the Department to make a one-time assessment of FSI resources when requested by one of the spouses upon institutionalization of one of them. IDAPA 16.03.05.736. The state regulations defining resources are consistent with the federal regulations. Rule 200 provides:

> Resources are cash, personal property, real property, and notes receivable. A participant, or spouse, must have the right, authority, or power to convert the resource to cash. The participant must have the legal right to use the resource for support and maintenance.

IDAPA 16.03.05.200. Rule 204 continues, "Property of any kind is a resource if the participant has an ownership interest in the property and the legal right to spend or convert the property to cash." IDAPA 16.03.05.204. Rule 238, titled "Home Excluded as Resource," provides, "The value of a participant's home is an excluded resource. A participant's home is property he owns, serving as his principal place of residence." IDAPA 16.03.05.238.

Under both federal and state law the resource definitions apply to both the initial assessment and the eligibility determination. In both cases, the home is to be excluded as a resource so that a married couple need have no fear that the couple will have to sell it in order to receive Medicaid nursing home assistance.

Here, the Staffords contend that their home should have been considered a resource at the assessment stage because it had been transferred to the Trust and was no longer real property but, rather, personal property, i.e. a beneficial interest in a trust. Therefore, they contend that it was no longer a home within the meaning of the resource definitions, was no longer an excluded resource, and should have been included to increase the value of their resources. They contend that their interest in the Trust is a resource because they "had an 'ownership interest' in the trust property—they had total control over it—and this rendered it a countable resource." However, the trust interest here did not fit within the definition of a resource, as set forth in Rule 204 and 20 C.F.R. § 416.1201.

Property is a resource "if the participant has an ownership interest in the property and the right to spend or convert the property to cash." Rule 204. The Staffords had an ownership interest in the Trust but they did not have the legal right to spend or convert the property to cash. According to Rule 200, a participant or spouse "must have the right, authority, or power to convert the resource to cash." Mrs. Stafford did not possess the "right, authority, or power" to convert the home property or her beneficial interest in the Trust into cash. 20 C.F.R. § 416.1201. The Trust was the legal owner of the property and the trustee was the fiduciary vested with the right, authority or power to convert the home property to cash. Either of the Staffords had the unqualified right to withdraw all or any portion of the trust property but, according to the Trust instrument, "Withdrawal shall be made only by a written instrument signed by one of the Grantors, or by an expressly authorized agent under a durable power of attorney and filed with the Trustee." Once the request for withdrawal was made to the trustee, the trustee would then exercise the "right, authority, or power" to convert the resource to cash. Since neither of the Staffords had the direct right to convert the home property to cash, it was not

a resource within the meaning of the regulations at the assessment stage.

The Staffords point to IDAPA 16.03.05.278 to support their argument that the trust corpus, including the home, should have been counted as a resource on the assessment date. Rule 278 provides, "A trust is a resource to a participant with the legal right to revoke the trust and use the principal for his own support and maintenance." The problem with this argument is that Rule 278 does not apply for Medicaid purposes. The rule continues, "See [Rules] 838 through 873 in these rules for treatment of trusts for Medicaid."

The Staffords next assert that Rule 871 supports their contention that the home became a non-excluded resource on the assessment date by virtue of the transfer into trust. That rule provides in pertinent part:

> The home and adjoining property loses its exclusion when transferred to a revocable trust, unless the participant or spouse is the sole beneficiary of the trust. The home is excluded again if removed from the trust. The exclusion restarts the next month.

IDAPA 16.03.05.871.01.d. On the surface, this provision seems to support the Staffords. However, a closer reading is necessary in order to determine whether or not that is the case. It must first be remembered that there are two points of valuation. The first point is the assessment date, which is the critical date in this case. The Department argues that Rule 871 does not apply at the assessment stage. According to the Department, Rule 871 only applies to eligibility determinations. The language of the rule and of the MCCA supports the Department's interpretation.

■■■ The Department refers to Rules 838 through 873 as the "rules for treatment of trusts for Medicaid," but also characterizes them as penalty provisions. These are the provisions referred to as "new mandatory transfer of asset penalties" by the Attorney General and included by House Bill No. 117 in I.C. § 56–214. These provisions were designed in large part to eliminate the use of certain trusts in order to shelter a couple's resources when applying for or receiving Medicaid assistance. As noted by the Third Circuit:

> Because Medicaid serves the purpose of providing necessary medical services for both the indigent and the elderly, a related goal of the MCCA is to preclude couples who possessed substantial resources from qualifying for Medicaid. By sheltering a portion of their shared resources in trusts or the community spouse's name, a couple might appear to have fewer resources, making them eligible for Medicaid. The 1988 Act curbed this sheltering practice by attributing certain amounts of the couple's overall resources to each spouse for eligibility purposes. The MCCA seeks to achieve a balance between spousal impoverishment and apportioning medical costs appropriately.

*Cleary* at 805. While the trust here is not the type of trust specifically targeted by the MCCA, the important point to be drawn from *Cleary* is that the trust or penalty provisions were designed to apply to eligibility.

Rule 871 derives from the MCCA, specifically 42 U.S.C. § 1396p(d)(3)(A). 42 U.S.C. § 1396p(d) is titled "Treatment of trust amounts" and its introductory paragraph, paragraph (1), reads: "For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter ... the rules specified in paragraph (3) shall apply to a trust established by such individual." 42 U.S.C. § 1396p(d)(1). Thus, it is clear that this provision and the derivative Rule 871 apply to eligibility for Medicaid assistance, and not to the initial assessment stage.

Furthermore, Rule 871 begins, "These trust treatment rules apply to all Medicaid participants. These rules apply to trusts established with the participant's assets ..." Who, then, is a "participant?" Rule 16 defines a participant as, "an individual apply for or receiving assistance." IDAPA 16.03.05.16. A person requesting an assessment is not described as a "participant." Indeed, nothing in the provisions dealing with assessment (Rules 736–738) pertains to participants—the word does not appear in any of the three

rules. When one applies for Medicaid, triggering the eligibility determination, one becomes a participant. Thus, the Department is correct in its conclusion that Rule 871 does not apply at the assessment stage. It would apply, for instance, where, after applying for or receiving Medicaid assistance, the participant or spouse transferred the home to a revocable trust having beneficiaries other than the spouse or participant. The rationale of the rule is readily apparent—to prevent third parties from benefitting from the home property when one of the spouses is seeking or receiving Medicaid nursing home assistance.

When the applicable provisions of federal and state law are considered together, the Department was correct in determining that the Staffords' home should be excluded as a resource in the resource assessment. The Legislature empowered the Department to carry out this program in accordance with federal acts (I.C. § 56–203) and to promulgate its own regulations for that purpose (I.C. § 56–202(b)). The Department's interpretation of federal law and of its rules is reasonable and we therefore give such interpretation deference. As the Department points out, a "resource" is an asset that can be converted to cash to provide for the support and maintenance of a Medicaid recipient. IDAPA 16.03.05.200. Federal and state law have long protected Medicaid recipients from having to utilize their home as a resource and it was not the intent of any party to this proceeding that the Staffords' home would have to be liquidated in order to defray the costs of Mr. Stafford's nursing home care. The transfer of the house to the Trust as a means of inflating the assessed value of the Staffords' resources and then the removal of the house from the Trust in order to qualify Mr. Stafford for Medicaid assistance is sleight of hand that does not comport with Medicaid law. This does not mean that the Staffords were somehow acting in an underhanded manner—they were just trying to use what appeared to be a loophole in the Medicaid law to preserve as much of their asset value as possible. However, the foregoing analysis of the Medicaid law discloses that this loophole does not exist. Since this is the linchpin of the Stafford's case, and since their case fails on this issue, we need not address other issues asserted on appeal.

### III.

We affirm the decision of the district court denying Medicaid benefits. Costs to the State.

Justices BURDICK and HORTON concur.

W. JONES, J., dissenting.

The majority does not find that the written language of the Department's regulations is ambiguous. However, they do look to the Department's and the Congress' intent for the Medicaid system. Therefore, I respectfully dissent. The majority opinion reaches its decision based upon an inference of what the Department intended to accomplish by its rules regarding the treatment of trust. While there is some logic to the approach taken by the majority, the fact is that the plain, unequivocal language used by the department in adopting its rules specifically allows for the placement of a person's home in a trust, thereby removing it from countable resources at the assessment stage of the Medicaid process. If indeed the Department intended to accomplish what the majority believes was intended, it would have been a very simple matter for the department to utilize the language which it used subsequent to the Staffords' transaction, which now clearly provides that a home transferred to a trust will nevertheless be an exempt asset not countable at the assessment stage of the Medicaid process. The fact that the department chose to amend its regulations subsequent to the Stafford transaction clearly illustrates that the interpretation by the Staffords prior to the amendment was most likely the proper interpretation of the regulations.

Analysis of a statute or regulation always begins with the literal language of the enactment. *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002) (citations omitted). This Court has established that it will not look to the legislative intent of a regulation where the express written language of the regulation is unambiguous. *Friends of Farm to Market*, 137

Idaho at 197, 46 P.3d at 14 (citing *Lawless v. Davis*, 98 Idaho 175, 560 P.2d 497 (1977)). "Where the language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to construe the language." *Id.* If the language is clear and unambiguous, then a court may not interpret the language to include an unwritten legislative intent.

**The Department erroneously interpreted its regulations by failing to include the corpus of the revocable trust (the home) in the initial resource assessment and therefore acted in a manner that was arbitrary and capricious.**

The majority is correct that I.C. § 56–202(b) grants the Department the authority to promulgate rules regarding Medicaid benefits. They are also correct in finding that I.C. § 56–203(b) grants the director the authority to cooperate with the federal government in carrying out the purpose of Medicaid benefits, and that I.C. § 56–203(g) grants the Department the authority to define persons entitled to Medicaid benefits. But, they are not correct when they state that "both the federal government and the state government expect federal law to predominate." By giving the Department the power to promulgate rules, cooperate with the federal government and define persons entitled to Medicaid benefits the legislature has granted the Department the power to create regulations in accordance with the "requirements for federal participation." I.C. § 56–203(g). This does not some how create any unwritten intent of the federal government into the Department's regulations. Nor, does it create a system where the Department's rules are secondary to the federal rules. This is a clear grant of authority by the legislature for the Department to create a system of regulations that are consistent with the federal system. Without a finding that the Department's regulations are ambiguous, this Court is re-writing the regulations to include the Department's and Congress' intent into unambiguous regulations and an unambiguous statute. The majority, in essence, is requiring the Staffords to comply with the unwritten intent of the Department and Congress rather then the unambiguous and plain meaning of the language of the regulation.

Additionally, the majority opinion correctly points out that the Department uses the same definition for resources for both the initial assessment date and the eligibility determination date. They also state that "[o]ne must go back and forth among the rules to determine which rule may or may not apply to either of the valuation dates." Nowhere does the majority find the regulations and the definition of resource ambiguous, nor should they. The Department intended to use one definition for resources, which it then limits in the rules applying to the initial assessment date (Rules 736–738), which is why one must ferret through the rules to determine which definition of resource applies to which date. However, the Department did not draft the regulations in a manner that conveyed their intent or Congress' intent. Simply put, the majority's actions in this case would be akin to a sign stating "Park Here" and the majority finding an intent for the sign to read "Do Not Park Here." Although, it may have been the intent, it is the Department's error for drafting clear regulations which fail to convey their intent. Potential Medicaid applicants and recipients should be able to rely on the clear and unambiguous language of the Department's regulations without having to dig through numerous documents containing minutes from the Congressional floor and court cases from the Third Circuit.

If the Department had intended for two definitions of "resources" they very easily could have written the regulations in that manner. The majority is correct in pointing out the use of the word "participant," which limits the "resource" definitions to people applying or receiving Medicaid benefits. However, the majority clearly overlooks the incorporation of the definition of "resources" into the assessment date. In Rule 737, the Department states that "resources" are counted at the assessment date, and then lists out exclusions to certain exemptions. This clearly and unambiguously incorporates the definition of "resources" from the eligibility rules into the assessment rules. The use of the word "participant" also clearly indi-

cates that the Department is capable of writing regulations in a manner to exclude any definitions of "resource" within that definition from also being a resource at the initial assessment date. By using the term resources interchangeably between the initial assessment and eligibility date the Department has indicated that there is a single use of the term "resource." Further, any and all "resources" that the Department expressly excluded at the assessment date, as opposed to the eligibility date, are written into Rule 737, entitled "Resources Excluded From Assessment Date." It is clear that the Department intended to exclude certain "resource" rules from the assessment date, and it is clear that they listed those exclusions in Rule 737. However, one major oversight of the Department was the failure to exclude revocable trusts as a resource when the corpus consists of the family home.

The Department did not draft the statutes in a manner that makes the unequivocal express language ambiguous. Although the Medicaid system is complicated, messy and tedious, it cannot be said that any ambiguity lies in the plain language of the regulations as drafted by the Department. For instance, the entirety of Rule 278 states "[a] trust is a resource to a participant with the legal right to revoke the trust, and use the principal for his own support and maintenance. See Sections [Rules] 838 through 873 in these rules for treatment of trusts for Medicaid." The majority uses the reference to Rules 873 through 838 as proof that the regulation "does not apply for Medicaid purposes." I cannot follow this logic. Rule 278 exists in the Idaho Administrative Code for the agency of the Department of Health and Welfare, in the chapter entitled Rules Governing Eligibility for Aid to the Aged Blind and Disabled. The Rule itself is entitled "trusts." I fail to see where it would be apparent that Rule 278's resource definition "does not apply for Medicaid purposes." One may argue that the title "Rules Governing Eligibility for Aid to the Aged Blind and Disabled" expressly states that the rules only apply for the eligibility date. However, Rule 736, which is in the same chapter, is entitled "Assessment Date and Counting FSI Resources." Further, Rule 736 states that the

Department conducts an assessment of the couple's *resources* at the assessment date. I fail to see how the majority reconciles the dual use of the term "resources" by the Department to find that one definition of resources applies to the initial valuation date and another definition of resources applies to the eligibility date.

In fact, the majority incorrectly interprets the Department's intent by finding that the definition of resources is not the same for the initial assessment date and the eligibility date. The Department recently amended Rule 737, which undoubtedly, as conceded by Petitioner, would eliminate all questions in this case, to state "[t]he resource rules used in determining eligibility for ... Medicaid are also used in determining the couple's total combined resources for the FSI resource assessment with the following exceptions: ... an excluded home placed in trust retains its exclusion for purposes of the resource assessment." I.D.A.P.A. 16.03.05.737. Previously, the regulation stated "[r]esources excluded in determining AABD cash are excluded in determining the couple's total combined FSI resources except ..." I.D.A.P.A. 16.03.05.737 (amended 2007). Therefore, the Department intended to use the same definition for "resource" throughout the regulations. What the Department might not have intended, and later corrected, was for potential applicants to artificially inflate their resources at the assessment date, by placing exempt resources in a revocable trust. The Department's regulation states that some excluded resources will not be excluded at the assessment date, but fails to mention that a home placed in a trust will retain its exclusion. The Department corrected this error by amending the regulation to add this language. Although, this action alone is not sufficient to show that the Department failed to effectively regulate against the Staffords' actions initially, it does lay weight to the Staffords' position.

Under the regulations, a trust is a resource to the person who has the legal right to revoke the trust. I.D.A.P.A. 16.03.05.278. The corpus of a revocable trust is a resource. I.D.A.P.A. 16.03.05.871.01.a. Real property is a resource, unless it qualifies for an exclu-

sion. I.D.A.P.A. 16.03.05.237. If a person is institutionalized, the value of their home (up to $750,000) is an excluded resource, when a spouse or child lives in the home. I.D.A.P.A. 16.03.05.238.02.a-b.

In the present case, the home would have been an excludable resource under the regulations. However, once the home was placed into the revocable trust, the corpus of the trust (the home) became a countable resource. The regulations clearly and unambiguously indicate that a home is an excluded resource when the non-institutionalized spouse lives in the home. However, the corpus of a revocable trust is a countable resource, regardless if the corpus of the trust is the family home. The Staffords had an ownership interest in the trust because they had a beneficiary interest in the trust and because they retained the right to revoke the trust and use the assets for their care and support. Therefore, the corpus of the trust (the home) is a countable resource. The majority and the Department should include the value of the corpus of the trust (the home) in the Staffords' initial resource assessment.

The clear and unambiguous language of the regulations expressly states that the corpus of a revocable trust is a countable asset. Failure to include the Trust as a resource affected a substantial right of the Staffords' because it decreased the non-institutionalized spouse's allowable share of assets and/or deprived Mr. Stafford of eligibility for benefits to which he was otherwise entitled. Therefore, this Court should have found the Department's action was in error. The majority has incorrectly given weight to the Department's intent rather than the unambiguous language of the statutes.

**The Department erroneously determined that a reduction in the corpus of the Trust did not constitute a "spend-down," and acted in a manner that is arbitrary, capricious and an abuse of discretion.**

The majority does not reach the issue of whether there was a valid "spend-down," because the majority found that the Stafford home was an excludable resource. I address this issue because I find that the corpus of

the revocable trust (the home) was a countable resource to the Staffords, as defined in the Department's regulations. A couple who is over-resourced at the assessment date (initial resource date), must "spend-down" their assets to qualify for Medicaid. That is, any amount of assets over the resource limit must be reduced. This may be accomplished by converting non-exempt assets into exempt assets.

The assessment date, or initial resource date, is the date that a person first enters continuous long-term care. I.D.A.P.A. 16.03.05.736. An assessment date determines the value of the couple's community and separate resources. I.D.A.P.A. 16.03.05.736. An assessment may be determined at the request of either spouse regardless if an application for Medicaid has been made. I.D.A.P.A. 16.03.05.736. In order to be eligible for Medicaid, a participant must meet the eligibility requirements. I.D.A.P.A. 16.03.05.700. Eligibility is determined by the current month when application for benefits is made and resources are counted as of the first of the current month. I.D.A.P.A. 16.03.05.700. The assessment date (initial resource date) is used to determine the non-institutionalized spouse's allowable share of property (one-half of the couple's combined resources on the assessment date up to a cap of $94,760). The eligibility date is used to determine whether the couple is eligible for Medicaid benefits based on the couple's resources as of the first day of the month that an application is made. I.D.A.P.A. 16.03.05.700, .736, .738.

Here, the Staffords, at the initial assessment date had a countable resource in the revocable trust (the home) valued at $172,700. At the eligibility date (July 1, 2004), that countable resource had been transferred to an exempt asset, a family home, by removing the value from the corpus of the revocable trust by deeding the residence to Mrs. Stafford who lives in it. In essence, the Staffords took an asset that had a cash value, and used that cash value to acquire an exempt asset. If the trust had been a pure cash asset, the Staffords would have been able to remove the exact same cash value and purchase a home, thereby

qualifying for Medicaid benefits. The removal of the home as a countable resource from the trust, and transferring the value of the home into an exempt resource was essentially the same thing and was a valid action by the Staffords.

The Department erred when it failed to consider the removal of the value of the home from the trust as a valid "spend-down" under the regulations. Therefore, the Department acted in a manner that is arbitrary, capricious and an abuse of discretion when it failed to follow the plain language of its own regulations. I.C. § 67–5279(3). The Department's action affected a substantial right of the Staffords' and should be reversed. I.C. § 67–5279(4).

Chief Justice EISMANN, concurring in the dissent of Justice WARREN JONES.

I fully concur in the dissent of Justice Warren Jones. It is not this Court's function to correct alleged errors or oversights made by the Department when it drafted its regulations.