# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34953

IN THE MATTER RE: MEDICAL
INDIGENCY APPLICATION OF
VIOLET E. O'BRIEN.

------------------------------------------------------------

ST. LUKE'S REGIONAL MEDICAL
CENTER, LTD.,

     Petitioner-Appellant,

v.

BOARD OF COMMISSIONERS OF ADA
COUNTY, IDAHO, in their official capacity
as the BOARD OF COUNTY
COMMISSIONERS for the County of Ada,
State of Idaho,

     Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2009 Term

2009 Opinion No. 25

Filed: March 4, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. D. Duff McKee, District Judge.

District court order dismissing petition for review in medical indigency determination, <u>vacated</u>. Case <u>remanded</u> for further proceedings.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for appellant. Mark Peterson argued.

Ada County Prosecuting Attorney's Office, Boise, for respondent. Gene Petty argued.

---

WALTERS, J. Pro Tem

Saint Luke's Regional Medical Center, Ltd. (St. Luke's), appeals the order of the district court dismissing its petition for review based on the district court's conclusion that a provider does not have standing to request judicial review of a board of county commissioners' decision to deny a medical indigency application. We vacate the order of dismissal and remand the case for further proceedings.

# I. FACTS AND PROCEDURAL BACKGROUND

From May 4, 2006, until June 21, 2006, St. Luke's provided treatment to an eighty-one year old widow, Violet O'Brien, for cervical cancer. O'Brien incurred $88,074.74 in medical and hospital bills over the course of her cancer treatment. The Ada County Medical Advisor found the treatment and services O'Brien received were necessary, non-emergency services. On June 6, 2006, O'Brien filed an application for county assistance with Ada County under the Medical Indigency Act, Idaho Code § 31-3501, *et seq.* On June 8, 2006, O'Brien submitted a separate application for Medicaid coverage with the Idaho State Department of Health & Welfare. This latter application was denied on the basis that O'Brien's income was too high under Social Security guidelines for her to be eligible for Medicaid.

On July 17, 2006, the Ada County Clerk issued its Initial Determination, denying county assistance to O'Brien. The determination to deny county assistance was based on the clerk's finding that O'Brien's application was untimely under Idaho Code § 31-3505. Under that statute, applications for non-emergency services must be filed ten days prior to receiving services. Because O'Brien had not submitted her application until thirty-nine days after the first day of the provision of necessary medical services, her application was determined to be untimely.

St. Luke's and Diagnostic Pathology Nampa Radiologists appealed the initial decision on August 4, 2006, requesting a hearing before the Ada County Board of Commissioners (the Board). The Board heard the appeal on October 4, 2006. The Board upheld the initial denial, determining that O'Brien's Medicaid application was not *bona fide*, and that her county application for assistance was therefore untimely. On November 1, 2006, St. Luke's timely filed a petition with the district court for judicial review of the Board's decision. A stipulation resolved a portion of the claim pertaining to medical services for which O'Brien's application was undisputed to be timely. Following a hearing on the petition for review, the district court issued its decision dismissing the petition, ruling that St. Luke's lacked standing to seek judicial review of the Ada County Board of Commissioners' decision under Idaho Code § 31-3505G.

St. Luke's timely appealed the decision of the district court to dismiss its petition for judicial review. The sole issue raised on this appeal is whether a medical provider has standing to seek judicial review under I.C. § 31-3505G of a final decision of a board of county commissioners denying county assistance under the Medical Indigency Act.

2

## II. STANDARD OF REVIEW

This Court freely reviews the interpretation of a statute and its application to the facts. *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007). The primary function of the Court is to determine and give effect to the legislative intent. Such intent should be derived from a reading of the whole act at issue. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539-40, 797 P.2d 1385, 1387-88 (1990).

If the statutory language is unambiguous, "the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Gillihan v. Gump*, 140 Idaho 264, 266, 92 P.3d 514, 516 (2004).

When a statute is ambiguous, the determination of the meaning of the statute and its application is also a matter of law over which this Court exercises free review. *Kelso & Irwin, P.A. v. State Insur. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000); *J.R. Simplot Co. v. Western Heritage Ins. Co.*, 132 Idaho 582, 584, 977 P.2d 196, 198 (1999). If it is necessary for this Court to interpret a statute, the Court will attempt to ascertain legislative intent, and in construing a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A.* at 134, 997 P.2d at 595. To ascertain legislative intent, the Court examines not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history. *Carrier v. Lake Pend Oreille Sch. Dist. No. 84*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006).

## III. ANALYSIS

Title 31, Chapter 35 of the Idaho Code (Medical Indigency Act) requires counties to provide medical care for indigents either through maintaining county hospitals or by paying providers for medical treatment rendered to indigents. I.C. § 31-3503. The policy behind Chapter 35 is to encourage personal responsibility for medical care and to charge counties with the duty to care for individuals that cannot meet this responsibility. Idaho Code § 31-3501. "In construing [Idaho Code § 31-3501, *et seq.*], this Court has stated that 'the legislature's general

intent in enacting the medical indigency assistance statutes is twofold: to provide indigents with medical care and to allow hospitals to obtain compensation for services rendered to indigents.'" *University of Utah Hosp. v. Ada County Bd. of Comm'rs*, 143 Idaho 808, 810, 153 P.3d 1154, 1156 (2007).

In order to qualify as a medical indigent, an individual or a third party on their behalf must complete, swear to, sign, and file an application with the clerk of the county. I.C. § 31-3504(1), (2). After receiving an application, the clerk conducts an interview and investigation, and files a statement of findings with the board. I.C. § 31-3505A. The board then makes an initial determination on the application. I.C. § 31-3505C. "An applicant or provider may appeal an adverse decision of the board by filing a written notice with the board within twenty-eight days of the initial determination." I.C. § 31-3505D. The board must hold a hearing on the appeal wherein the applicant may produce additional evidence pertaining to eligibility. I.C. § 31-3505E.

Idaho Code § 31-3505G governs judicial review of a board's final decision. It provides:

> If, after the hearing as provided in section 31-3505E, Idaho Code, the final determination of the board is to deny an application for financial assistance with necessary medical services, the applicant, or a third party making application on an applicant's behalf, may seek judicial review of the final determination of the board in the manner provided in section 31-1506, Idaho Code.

The referenced statute, I.C. § 31-1506, provides: "Unless otherwise provided by law, judicial review of any act, order or proceeding of the board shall be initiated by any person aggrieved thereby within the same time and in the same manner as provided in chapter 52, title 67, Idaho Code, for judicial review of actions." I.C. § 31-1506(1). Thus, the Idaho Administrative Procedure Act, Idaho Code § 67-5201, *et seq.*, (IDAPA), is applicable to a county board decision of whether to grant an application for medical relief.

The Medical Indigency Act has never explicitly granted providers the right to petition for judicial review. Until 1996, Idaho Code § 31-3505 only provided *applicants* the right to judicial review. I.C. § 31-3505 (1981) (repealed 1996). At that time, "applicant" was an undefined term within the statute.

However, for over twenty years, Idaho courts have recognized that providers have standing to seek judicial review in the district courts of adverse decisions made by county boards, pursuant to this Court's rulings in *Carpenter v. Twin Falls County*, 107 Idaho 575, 691

4

P.2d 1190 (1984) and *Intermountain Health Care, Inc. v. Board of County Comm'rs of Blaine County*, 109 Idaho 299, 707 P.2d 410 (1985) [hereinafter *Intermountain Health Care II*]. In both cases this Court ruled that providers have standing to seek judicial review of adverse county board decisions based on providers' expectation of compensation for medical care of indigents under the Medical Indigency Act.

In *Carpenter*, this Court considered several issues pertaining to the Medical Indigency Act, including whether a provider had standing to appeal an adverse decision of a board of county commissioners. This Court affirmed the decision of the district court granting a hospital standing to apply for financial relief under the Medical Indigency Act, despite the fact that Carpenter had previously filed for bankruptcy. The county board claimed the hospital's standing was derived from the indigent's standing, and since Carpenter's bankruptcy disqualified him for medical indigency benefits, the hospital was similarly disqualified. *Carpenter*, 107 Idaho at 585, 691 P.2d at 1200.

This Court rejected that argument, holding the hospital possessed a right to pursue a claim independent of Carpenter. This Court concluded that because Idaho Code §§ 31-3406, 31-3407 & 31-3508 all dealt with a provider's right to seek payment for the care of medical indigents, providers had the right to appeal as a real party in interest. In reaching its conclusion, the Court stated:

> We read these provisions as clearly establishing and we so hold, that the Hospital is a real party in interest, entitled to make an application for medical indigency benefits on behalf of the person to whom emergency medical services were provided, *entitled to pursue the denial of such benefits by appeal*, and entitled to the receipt of the County's payment."

*Id.* at 586, 691 P.2d at 1201 (emphasis added).

A real party in interest "is the person who will be entitled to the benefits of the action if successful, one who is actually and substantially interested in the subject matter." *Carrington v. Crandall*, 63 Idaho 651, 658, 124 P.2d 914, 917 (1942). *See Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 870, 993 P.2d 1197, 1201(1999); *State, Dep't of Law Enforcement v. One 1990 Geo Metro,* 126 Idaho 675, 680, 889 P.2d 109, 114 (Ct. App. 1995).

In *Intermountain Health Care II*, this Court held the provider, Intermountain Health Care, Inc. (IHC), had standing to seek review of an adverse board decision. *Intermountain Health Care II* at 302, 707 P.2d at 413. Because the applicable statute at that time only named the

5

applicant as having the right to a hearing before a board of commissioners and to judicial review, Blaine County had argued that the applicants, not IHC, were the only proper parties to the action. *Intermountain Health Care, Inc. v. Board of County Com'rs of Blaine County*, 107 Idaho 248, 250, 688 P.2d 260, 262 (Ct. App. 1984) [hereinafter *Intermountain Health Care I*]. On the initial appellate review of the proceedings in the district court, the Idaho Court of Appeals rejected the county's argument, ruling that IHC, as a provider, had standing due to its identity of interest with the applicant. *Id.* at 251, 688 P.2d at 263. Analogizing the situation to a third-party beneficiary contract, the Court of Appeals reasoned that since the application for indigency relief was made for the benefit of IHC, "IHC should have the right to pursue the application to the extent allowed by statute." *Id.* On review of the Court of Appeals' decision, this Court agreed that IHC was a proper party in the appeal, stating, "[T]he initial parties, the Pritchetts, and IHC have an identity of interest," and that IHC was the party entitled to payment having subrogated its interests to the interests of the applicants. *Intermountain Health Care II* at 302, 707 P.2d at 413.

Viewed together, the holdings in *Carpenter* and *Intermountain Health Care I & II* limit standing to parties with pecuniary expectations because they were predicated on the basis that providers are entitled to compensation from the county for medical services rendered to indigents. Thus, before 1996, third parties without pecuniary expectations, such as adult children, relatives, and friends of patients, did not have standing to seek judicial review of final decisions of a county board rendered on a medical indigency application.

The legislature amended the Medical Indigency Act in 1996. 1996 Idaho Session Laws, ch. 410, 1357. The 1996 amendments augmented the statute governing judicial review and added to the defined terms. Idaho Code § 31-3505 was amended to provide that a "third party making application of the applicant's behalf" had the right to petition for judicial review in addition to an applicant. I.C. § 31-3505G. The definitions section of Idaho Code § 31-3502 was expanded to include definitions for the terms "applicant," "third party applicant," and "provider" among others. 1996 Idaho Session Laws, ch. 410, p. 1357.

After the 1996 amendments, until the instant case, Idaho courts have continued to allow providers to petition the district court for judicial review of county board decisions consistent with the rulings in *Carpenter* and *Intermountain Health Care II*. *E.g. Mercy Med. Ctr. v. Ada County*, 143 Idaho 899, 155 P.3d 700 (2007); *Sacred Heart Med. Ctr. v. Kootenai County Comm'rs*, 136 Idaho 787, 41 P. 3d 215 (2001); *Bonner Gen. Hosp. v. Bonner County*, 133 Idaho

6

7, 981 P.2d 242 (1999); *Mercy Medical Center v. Ada County, Bd. of County Commissioners of Ada County*, 146 Idaho 226, 233, 192 P.3d 1050, 1057 (2008) (acknowledging a provider's ability to seek judicial review under I.C. § 31-3505G).

In the instant case, the district court held providers did not have standing to appeal the county boards' decisions on medical indigency applications, concluding that the 1996 amendments to the Medical Indigency Act had overturned the rulings of *Carpenter* and *Intermountain Health Care II.*   Ada County argues that the plain meaning of Idaho Code § 31-3505G demonstrates the legislature's intent to overturn *Carpenter* and *Intermountain Health Care II*, using the principles stated in *Seward v. Pacific Hide & Fur Depot* as a basis for its argument:

> This Court assumes that the legislature knew of existing precedent at the time it passed or amended a statute.  When a statute is amended, however, it is presumed that the legislature intended the statute to have a meaning different from the meaning accorded the statute before amendment.

138 Idaho 509, 512, 65 P.3d 531, 534 (2003) (citation omitted).

Essentially, Ada County urges that the legislature intended to make a subtraction by addition when it amended Idaho Code § 31-3505G.  That is, by adding definitions and the term "third parties making application to the applicant's behalf," the legislature intended to subtract providers from the group of parties that traditionally have standing to seek judicial review of medical indigency decisions made by a county's board of commissioners.  According to Ada County, the omission of providers from the language of Idaho Code § 31-3505G manifests such intent.

Ada County's argument is unconvincing. In discussing rules of statutory construction, this Court in *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 76 P.3d 951 (2003), recognized that some terms and phrases have developed specific meanings or subtexts resulting from years of consistent judicial interpretation and "[t]his Court assumes the Legislature has full knowledge of this existing judicial interpretation when it amends a statute." 139 Idaho at 212, 76 P.3d at 956 (quoting *State v. Martinez*, 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct. App. 1995)). Furthermore, in *George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990), this Court held "[t]he legislature is presumed not to intend to overturn long established principles of law unless an intention to do so plainly appears by express declaration or the language employed admits of no other construction."  Here, there is no express declaration

7

or language that offers an unequivocal construction that the legislature intended to overturn the long established principle that providers have standing to seek review of adverse board decisions. If the legislature had intended to deny providers standing and to overturn *Carpenter* and *Intermountain Health Care II*, it could have simply added the clause "providers have no standing to seek judicial review" into the statute. It clearly did not.

It is more likely the legislature, assumed under *Seward* to be aware of the precedent granting providers standing, simply did not see the need to codify what was already well established and accepted as the law—that providers have standing to seek judicial review of adverse decisions of a county board. While *Carpenter* and *Intermountain Health Care II* grant standing to providers with pecuniary expectations, it did not extend to third party applicants under the holdings. This explains the need to amend Idaho Code § 31-3505G to include third party applicants, and why it was not necessary to include a reference to providers in the amendment. Ada County's argument leads to absurd results which are contrary to the expressed legislative intent. *Gillihan v. Gump*, 140 Idaho at 266, 92 P.3d at 516. As stated above, the intent behind the Medical Indigency Act is two-fold, to assure medical care for indigents and to allow hospitals to obtain compensation for services rendered to indigents. *University of Utah Hosp. v. Ada County Bd. of Comm'rs*, 143 Idaho 808, 810, 153 P.3d 1154, 1156 (2007). Precluding providers from relief through review in the district court frustrates the second prong of the legislative intent.

Moreover, the district court's narrow interpretation of the statute would lead to an absurd patchwork of parties entitled to appeal at one stage and not at another, an inconsistent appellate procedure. A provider would be allowed seek review of a board's initial decision under I.C. § 31-3505D, but would lack standing to seek further judicial review under I.C. § 31-3505G. Inversely, a third party applicant would have the right to appeal final board decisions, I.C. § 31-3505G, but not initial board decisions, I.C. § 31-3505D, according to the district court's interpretation. Consequently, a county could arbitrarily determine it is not obligated to compensate a provider, and the provider would not have standing to appeal that decision except to the county board. The only way to assure a provider would have standing to seek judicial review would be for each provider to co-sign every medical indigency application. This is a seemingly meaningless and absurd ritual exalting form over substance. *Intermountain Health Care I*, 107 Idaho at 250-51, 688 P.2d at 262-63.

8

This Court has stated that placing too heavy a burden on providers to collect on services rendered to medical indigents could reduce hospitals' ability to provide such services. *University of Utah Hosp. v. Ada County Bd. of Comm'rs*, 143 Idaho at 811, 153 P.3d at 1157. Certainly, the ramifications of the district court's ruling could lead to a chilling effect on provider's willingness to provide care to indigents. This frustrates the intent of the legislature to provide indigents with medical care.

This Court concludes that the legislature did not intend by the 1996 amendments to the Medical Indigency Act to overturn this Court's rulings in *Carpenter* and *Intermountain Health Care II* that medical care providers are real parties in interest which have standing to seek judicial review of adverse county medical application decisions under Idaho Code § 31-3505G. Therefore, we hold that providers continue to have standing to seek judicial review of final decisions of a county board denying a medical indigency application pursuant to rationale of *Carpenter* and *Intermountain Health Care II.*

## IV. CONCLUSION

This Court holds that the district court erred by dismissing St. Luke's petition for judicial review of the Ada County Board of Commissioners' denial of medical indigency aid to Violet O'Brien based on its conclusion that providers lack standing to seek judicial review under Idaho Code 31-3505G. The order of dismissal is vacated and the case is remanded to the district court for further proceedings. Costs on appeal are awarded to the appellant.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR.**

9