IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 33753

| | | |
|---|---|---|
| BURNS HOLDINGS, LLC, an Idaho limited liability company, | ) ) ) | Rexburg, September 2008 Term |
| Plaintiff-Appellant, | ) ) ) | 2009 Opinion No. 65 |
| v. | ) ) ) | Filed: July 9, 2009 |
| MADISON COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Idaho, | ) ) ) ) ) | Stephen Kenyon, Clerk |
| | | AMENDED OPINION, THE COURT'S PRIOR OPINION |
| Defendant-Respondent. | ) ) ) | DATED MAY 1, 2009 IS HEREBY WITHDRAWN |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Honorable Brent J. Moss, District Judge.

The decision of the district court is <u>vacated</u>, and the matter is <u>remanded</u> with directions to dismiss the petition for judicial review.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for appellant. Robert Harris argued.

Madison County Prosecutor's Office, Rexburg, for respondent. Troy Evans argued.

_____

HORTON, Justice

Appellant Burns Holdings, LLC (Burns) filed applications for an amendment to the Madison County Comprehensive Plan and to rezone property it owns. The Madison County Board of Commissioners (Board) denied the application for amendment of the comprehensive plan and took no action on the rezone application. Burns petitioned for judicial review and the district court upheld the Board's decision. Burns has appealed to this Court. Because there is no statute authorizing judicial review of the Board's action, we are not at liberty to review it. We therefore vacate the decision of the district court and remand this case to the district court with directions to dismiss the petition for judicial review.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Burns owns a 49-acre parcel in Madison County, Idaho (the County) and would like to build a concrete batch plant on the site. The property is located close to the North Rexburg Interchange on Highway 20 in an area that is characterized as agricultural and residential. In November of 2004, Burns filed two applications with the County. The first sought to amend the County's comprehensive plan and comprehensive plan map to allow commercial and light industrial activity in the area within which the subject land is located. The second application requested a zone change of the property from "Transitional Agriculture Two" to "Commercial" and "Light Industrial." Specifically, Burns requested that 12 acres be rezoned for light industrial use where the concrete batch plant would be located and 37 acres be rezoned as a commercial buffer surrounding the property. In a 6-1 vote, the Madison County Planning and Zoning Commission recommended that the Board approve Burns' applications.

The Board held a public hearing on February 28, 2005. At the same hearing, the Board heard another matter immediately before Burns'—that of Walters Ready Mix, Inc. (Walters). Walters also filed applications seeking both an amendment to the comprehensive plan and a zone change to allow operation of a gravel pit of 80 acres surrounded by a commercial buffer on a 130-acre site. The Walters property is located close to South Rexburg and is proximal to other commercial/industrial sites. The Board tabled its decisions on both the Burns and Walters applications until a later date. The Board met again to discuss the Burns applications on March 7, 2005 and voted to deny the application to amend the comprehensive plan and map. The Board took no action on the Burns application for a zone change. Around the same time the Board denied the Burns application, the Board approved the Walters applications.

Following the Board's decision, Burns filed its first petition for judicial review, alleging unlawful reasoning and decision-making by the Board. Burns highlighted numerous parallels between its applications and the Walters applications in an attempt to prove that the Board acted arbitrarily and capriciously in approving the Walters applications while denying the Burns application. With the agreement of the parties, the district court remanded the matter back to the Board because the court was concerned that, *inter alia*, the Board's decision had erroneously relied on a County traffic count while ignoring Burns' traffic expert.

The Board reexamined the traffic and safety issues but again denied Burns' request for an amendment to the comprehensive plan. On June 1, 2006, the Board issued a fourteen-page

decision articulating its basis for the denial. Based upon its decision to deny Burns' request for amendment of the comprehensive plan, the Board did not address Burns' zone change application.

Burns filed a second petition for judicial review, and the district court upheld the Board's decision.

## II. ANALYSIS

Burns asks us to reverse the Board's decision because it claims the Board's denial of its request was result-oriented when compared to the decision made regarding the Walters applications, the Board erroneously relied on lay opinion rather than certain expert testimony offered by Burns, and the Board's action was arbitrary and capricious. We must begin our analysis, however, by deciding whether we are free to review the Board's action at all.

### A. The Board's action is not reviewable.

We begin by considering the nature of a petition for judicial review. When a district court entertains a petition for judicial review, it does so in an appellate capacity. *Lane Ranch P'ship v. City of Sun Valley*, 144 Idaho 584, 588, 166 P.3d 374, 378 (2007); *Ater v. Idaho Bureau of Occupational Licenses,* 144 Idaho 281, 284, 160 P.3d 438, 441 (2007). A party's right to "appeal" an administrative decision, i.e., to obtain judicial review, is governed by statute.[1] *Cobbley v. City of Challis*, 143 Idaho 130, 133, 139 P.3d 732, 735 (2006) ("Judicial review of an administrative decision is wholly statutory; there is no right of judicial review absent the statutory grant."). Thus, I.R.C.P. Rule 84(a)(1), states in relevant part that "[a]ctions of state agencies or officers or actions of a local government, its officers or its units are not subject to judicial review unless expressly authorized by statute."

Despite the parties' arguments to the contrary, we conclude that there is no statute authorizing review of the Board's action in this case.

A county board of commissioners does not fall within the definition of an "agency" for purposes of applying the Idaho Administrative Procedure Act (IAPA), I.C. §§ 67-5201 *et seq*., in its totality. *Petersen v. Franklin County*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997) (citing I.C. § 67-5201(2)). Thus, the Board's actions are not subject to judicial review under the IAPA unless there is a statute invoking the judicial review provisions of the IAPA. *Gibson v. Ada*

---

[1]    The Legislature's authority to define the right of judicial review is found in article V, section 13 of the Idaho Constitution:  "the legislature shall provide a proper system of appeals. . . ."

3

*County Sheriff's Dept.*, 139 Idaho 5, 7-8, 72 P.3d 845, 847-48 (2003) (citing *Idaho Historic Preservation Council, Inc. v. City Council of Boise,* 134 Idaho 651, 653-54, 8 P.3d 646, 648-49 (2000)).

This Court recently addressed a specific question presented by this appeal:  whether a party is entitled to judicial review of a county's decision regarding amendment of a comprehensive plan.  *Giltner Dairy, LLC v. Jerome County*, 145 Idaho 630, 181 P.3d 1238 (2008).  In *Giltner Dairy*, we determined that there is no statutory right of judicial review of a county's decision to amend its comprehensive plan map.

Burns argues that the Local Land Use Planning Act (LLUPA), I.C. §§ 67-6501 *et seq.*, permits judicial review of the Board's decision under the IAPA.  In support of this claim, Burns cites to this Court's decisions in *Crown Point Dev., Inc. v. City of Sun Valley,* 144 Idaho 72, 156 P.3d 573 (2007) and *Evans v. Teton County,* 139 Idaho 71, 73 P.3d 84 (2003).  Neither of these decisions supports the proposition that a county's decision regarding amendment of a comprehensive plan is subject to judicial review.[2]

The Board also takes the position that this action is subject to judicial review, relying upon I.C. §§ 67-6519(4) and 67-6521(1)(d).  As to the former, our holding in *Giltner Dairy* controls our decision today.  We first noted that "Idaho Code § 67-6519 applies to applications for a permit required or authorized under Chapter 65 of Title 67, Idaho Code."  145 Idaho at 633, 181 P.3d at 1241.  We then recognized that "[a] request to change the comprehensive plan map is not an application for a permit."  *Id.*  Thus, we concluded that "Idaho Code § 67-6519 does not provide any right to obtain judicial review."  *Id.*

As to the claim that I.C. § 67-6521 provides a basis for judicial review, we must consider the language of this statute.  Idaho Code § 67-6521(d) provides:  "An affected person aggrieved by a decision may within twenty-eight (28) days after all remedies have been exhausted under local ordinances seek judicial review as provided by chapter 52, title 67, Idaho Code."  An "affected person" is defined by I.C. § 67-6521(1)(a) as "one having an interest in real property which may be adversely *affected by the issuance or denial of a permit* authorizing the development." (emphasis added).  Idaho Code § 67-6521(b) clarifies that a permit under

---

[2]    In *Crown Point*, the Court considered the city's denial of Crown Point's preliminary plat review application and design review application, and in *Evans*, this Court considered a challenge to the county's approval of an application for a Planned Unit Development (PUD).

4

consideration in a decision subject to judicial review is "a permit required or authorized under this chapter."[3]

As we held in *Giltner Dairy,* "[a] request to change the comprehensive plan map is not an application for a permit." 145 Idaho at 633, 181 P.3d at 1241. Accordingly, we conclude that I.C. § 67-6521(1)(d) does not provide a basis for judicial review of the Board's denial of the application for amendment to the comprehensive plan.

The Board took no action on Burns' application for a rezone, but that failure to act equates to a denial of the application. Furthermore, the Board's review of Burns' application for an amendment to the comprehensive plan involved consideration of the same factors the Board would have been obliged to consider in evaluating Burns' application for a rezone. Even so, there was no right of judicial review of the Board's action with respect to the rezone application because, as with the application for an amendment to the comprehensive plan, there is no statute authorizing judicial review of a county's action regarding a rezone application. An application for a zoning change, like a request for an amendment to a comprehensive plan, is not an application for a "permit," and thus no review is authorized under the LLUPA. There is no specific grant of authority to review the Board's action with respect to the request for rezone, and we may not assume the role of the legislature and grant that authority to ourselves.

As we noted in *Burt v. City of Idaho Falls*, 105 Idaho 65, 66, 665 P.2d 1075, 1076 n.2 (1983), "[d]irect judicial review…means an appellate process by which land use decisions by local authorities are appealed to a judicial forum. While we hold that a legislative zoning decision is not subject to direct judicial review, it nonetheless may be scrutinized by means of collateral actions such as declaratory actions."

For the foregoing reasons, the district court's decision must be vacated and the petition for judicial review must be dismissed.

**B. Neither party is entitled to attorney fees on appeal.**

Both parties seek attorney fees under I.C. § 12-117 and I.C. § 12-121. Attorney fees can only be awarded under I.C. § 12-117 if: (1) this Court finds in favor of a party and (2) the other party acted without a reasonable basis in fact or law. *Ada County Highway Dist. v. Total Success*

---

[3]     I.C. § 67-6517 refers to "permit as defined in this chapter," reinforcing our view that LLUPA's references to a "permit," for purposes of the right to judicial review, relate to those permits identified within chapter 65, Title 67.

*Investments, LLC*, 145 Idaho 360, 372, 179 P.3d 323, 335 (2008). Because the Board's action is not subject to judicial review, this Court does not have the power to affirm or reverse as requested by the parties. Because it cannot be said that either party is the prevailing party on appeal, neither party has met the criteria for an award of attorney fees under I.C. § 12-117. Additionally, neither party is entitled to attorney fees under I.C. § 12-121 because that statute does not provide the basis for a fee award in an administrative action initiated by petition. *Allen v. Blaine County*, 131 Idaho 138, 143, 953 P.2d 578, 583 (1998).

## III. CONCLUSION

We vacate the district court's decision upholding the Board's denial of Burns' application to amend the comprehensive plan and map because the Board's action was not subject to judicial review by the district court. This matter is remanded with directions to the district court to dismiss the petition for judicial review. No costs or attorney fees are awarded.

Chief Justice EISMANN and Justice W. JONES, **CONCUR**.

J. JONES, J., dissenting.

I respectfully dissent. Had Burns merely sought an amendment to the Madison County Comprehensive Plan Map, without also seeking permission to develop its property, I would concur in the result reached by the Court. However, Burns' purpose in petitioning the county was to obtain permission to develop its property. The zoning change sought by Burns would have made its proposed development project a permitted use under the zoning ordinance. Because Burns is an applicant aggrieved by a governing body's decision denying permission that would authorize the proposed development of its property, I believe Burns is entitled to obtain judicial review under the Local Land Use Planning Act (LLUPA), Idaho Code §§ 67-6501 - 6538.

In *Giltner Dairy, LLC v. Jerome County*, 145 Idaho 630, 181 P.3d 1238 (2008), we held, in essence, that a property owner seeking merely to amend a county comprehensive plan map, without also seeking authorization to develop its property, may not obtain judicial review under Idaho Code § 67-6521. We stated: "Because the amendment to the comprehensive plan map does not authorize development, Giltner Dairy is not an affected person under [Idaho Code § 67-6521]." *Id.* at 633, 181 P.3d at 1241. Thus, because an amendment to a comprehensive plan map does not, in and of itself, authorize any development, a person unsuccessfully seeking such

6

an amendment may not obtain judicial review. However, *Giltner Dairy* strongly suggested that a property owner who unsuccessfully applied for a land use classification that would permit development of his property would be able to obtain judicial review under Idaho Code § 67-6521.

Indeed, following the enactment of LLUPA in 1975, this Court consistently held for over a quarter of a century that LLUPA authorized judicial review of county zoning decisions under either Idaho Code § 67-6519 or Idaho Code § 67-6521. *See Hill v. Bd. of County Comm'rs*, 101 Idaho 850, 851, 623 P.2d 462, 463 (1981) (holding I.C. § 67-6519 to be "controlling statutory authority for [the district court's] review of the [county] board's zoning decision"); *Love v. Bd. of County Comm'rs of Bingham County*, 105 Idaho 558, 559, 671 P.2d 471, 472 (1983) (holding "the district court was empowered to review on appeal the rezoning decision of the County" under I.C. § 67-6521). In *Burt v. City of Idaho Falls*, 105 Idaho 65, 665 P.2d 1075 (1983), we clarified, however, that pre-LLUPA decisions confining review to quasi-judicial zoning actions, i.e., those which apply "a general rule to a specific interest, such as a zoning change affecting a single piece of property, a variance, or a conditional use permit," continued to apply under LLUPA. *Id.* at 67, n.4, 665 P.2d at 1077, n.4 (quoting *Allison v. Washington County*, 548 P.2d 188, 191 (Or. Ct. App. 1976). Zoning actions that were legislative in nature, i.e., those affecting "a large area consisting of many parcels of property in disparate ownership," were not reviewable either pre- or post-LLUPA. *Id.*

These cases were good law for 25 years. The Court has routinely held quasi-judicial zoning decisions, such as that involved in this case, to be reviewable under LLUPA[4] until the Court's 2008 decision in *Highlands Development Corp. v. City of Boise*, 145 Idaho 958, 188 P.3d 900 (2008). There, the Court decided that LLUPA contained "no provision granting judicial review of the initial zoning classification applied to annexed property." *Id.* at 961, 188 P.3d at 903. Today, the Court expands the *Highlands* decision to preclude judicial review of any zoning decision under LLUPA.

The dissent in *Highlands* anticipated today's decision, laying out the case for continuing the tradition of providing judicial review of quasi-judicial zoning decisions. *Id.* at 962-66, 188 P.3d at 904-08. What was stated in the *Highlands* dissent applies equally, but need not be

---

[4] *See, e.g., In Re Application for Zoning Change*, 140 Idaho 512, 96 P.3d 613 (2004), where the Court held the decision on a rezoning application to be reviewable under I.C. § 67-6521(d). *Id.* at 514, 96 P.3d at 615.

restated, here. Since issuance of the *Highlands* decision, the Court has issued two decisions regarding judicial review of administrative actions that are deserving of consideration and application here.

On March 4, 2009, the Court issued opinions in *St. Luke's Regional Medical Center, Ltd. v. Board of Commissioners of Ada County*, 146 Idaho ____, 203 P.3d 683 (2009), and *Saint Alphonsus Regional Medical Center v. Ada County*, 146 Idaho ____, 204 P.3d 502 (2009), both of which vacated district court orders dismissing petitions for judicial review of county medical indigency determinations. The district court dismissed both petitions for review, concluding that the medical indigency statutes, particularly Idaho Code § 31-3505G, did not specifically list medical providers as persons or entities authorized to obtain judicial review of county indigency determinations under the Idaho Administrative Procedure Act (IDAPA), Idaho Code §§ 67-5201 - 5292. Indeed, section 31-3505G only provides for "the applicant, or a third party making application on an applicant's behalf" to seek judicial review of a county board's final determination denying an application for medical assistance.

In *St. Luke's,* which contains the Court's complete analysis of the issue, the Court determined that, despite the statute's lack of a specific reference to medical providers as being entitled to seek judicial review of an adverse county determination, medical providers had the authority to seek judicial review based upon two grounds: (1) the Legislature's apparent acquiescence in the Court's long-standing practice of allowing medical providers to obtain judicial review of adverse decisions affecting their interests, and (2) the denial of judicial review would produce an absurd result, given the intent of the statutory scheme. Both grounds apply equally here.

In *St. Luke's*, the Court set out the following background:

> The Medical Indigency Act has never explicitly granted providers the right to petition for judicial review. Until 1996, Idaho Code § 31-3505 only provided *applicants* the right to judicial review. I.C. § 31-3505 (1981) (repealed 1996). At that time, "applicant" was an undefined term within the statute.

> However, for over twenty years, Idaho courts have recognized that providers have standing to seek judicial review in the district courts of adverse decisions made by county boards, pursuant to this Court's rulings in *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984) and *Intermountain Health Care, Inc. v. Board of County Comm'rs of Blaine County*, 109 Idaho 299, 707 P.2d 410 (1985) [hereafter *Intermountain Health Care II*]. In both cases this Court ruled that providers have standing to seek judicial review of adverse county board decisions

8

based on providers' expectation of compensation for medical care of indigents under the Medical Indigency Act.

*Id.* at ___, 203 P.3d at 686. Ada County contended the district court had correctly determined that medical providers had no right to seek judicial review of medical indigency decisions because certain 1996 amendments to the Medical Indigency Act, including I.C. § 31-3505G, failed to specifically list medical providers as being entitled to appeal, thereby demonstrating a legislative intent to overrule *Carpenter* and *Intermountain Health Care II*. We dismissed that argument, stating:

> In discussing rules of statutory construction, this Court in *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 76 P.3d 951 (2003), recognized that some terms and phrases have developed specific meanings or subtexts resulting from years of consistent judicial interpretation and "[t]his Court assumes the Legislature has full knowledge of this existing judicial interpretation when it amends a statute." . . . Furthermore, in *George W. Watkins Family v. Messenger*, 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990), this Court held "[t]he legislature is presumed not to intend to overturn long established principles of law unless an intention to do so plainly appears by express declaration or the language employed admits of no other construction." Here, there is no express declaration or language that offers an unequivocal construction that the legislature intended to overturn the long established principle that providers have standing to seek review of adverse board decisions. If the legislature had intended to deny providers standing and to overturn *Carpenter* and *Intermountain Health Care II,* it could have simply added the clause "providers have no standing to seek judicial review" into the statute. It clearly did not.

*Id.* at _____, 203 P.3d at 688.

The history of judicial review under LLUPA is strikingly similar to that with regard to the medical indigency statutes. Sections 67-6519 and 67-6521 were enacted into law in 1975. 1975 Idaho Sess. Laws, ch. 188, § 2, p. 524-25. The *Hill* case, wherein the Court determined that I.C. § 67-6519 authorized judicial review of zoning decisions, was decided in 1981, and the *Love* case, wherein the Court determined that I.C. § 67-6521 authorized judicial review of zoning decisions, was decided in 1983. It is presumed that the Legislature had full knowledge of those judicial interpretations when it amended section 67-6519 in 1993, 2000 and 2003, and when it amended section 67-6521 in 1993 and 1996. Yet, in none of these instances did the Legislature indicate any intent to overturn the long-standing and consistently-followed holdings in *Hill* and *Love*. It must be presumed that the Legislature was content with such holdings.

9

Burns and persons similarly situated have even a stronger case to make, based on the language of the pertinent LLUPA statutes, than the medical providers in *St. Luke's* and *St. Al's* had under the medical indigency statutes. I.C. § 67-6519(4) provides that "[a]n applicant denied a permit or aggrieved by a decision" may obtain judicial review. The Court acknowledges that an applicant denied a permit may seek judicial review but fails to take into account that the statute also allows review when an applicant is aggrieved by a decision. The language cannot be construed to mean the same thing, i.e., that a permit need be involved, otherwise the alternate language would have no meaning. With regard to § 67-6521(1) the Court acknowledges that a person affected by the issuance or denial of a permit authorizing development may seek judicial review but holds that a person affected by the issuance or denial of permission authorizing development has no such right. This plays into the second ground relied upon by the Court in *St. Luke's*.

In this case, had Burns applied for a special use permit that would have allowed the very same development Burns wished to pursue on its property through the zoning change, it would have had the right, under the Court's decision, to obtain judicial review of the adverse decision. Since it sought to change the zoning status of the property, which would have allowed it to pursue its development plans as permitted uses under the new zoning classification, the Court holds it may not obtain judicial review. This appears to be a distinction without much difference. The two purposes are functionally equivalent.

By allowing judicial review in certain instances where permission is granted or denied by virtue of a piece of paper entitled "permit" and denying judicial review where the permission is either allowed or prohibited in a document entitled "zoning ordinance," there is the risk of untoward consequences. For example, a developer wishing to pursue plans for construction of a nuclear power plant may determine that, with a favorably-inclined county commission, it is better to seek a zoning change that would permit such project, rather than a conditional use permit that would provide the same result. If the county commission granted the zoning change, affected citizens would have no right of judicial review. If the developer pursued the conditional use permit avenue, the affected citizens would have the right of judicial review.

LLUPA was enacted to require local governing bodies to implement comprehensive planning and zoning schemes. With regard to the question of zoning, the Legislature engrafted into Idaho Code § 67-6511 a number of requirements and protections designed to give property

10

owners the right to develop their property and to give their neighbors the right to have a say in the matter. Safeguards, such as notice, required public hearings and the like were implemented by the Legislature and have been supplemented by the courts to ensure fair and proper procedures. The statement of purpose for LLUPA's enacting legislation, Senate Bill 1094, indicated that the bill "provides for due process in land use decisions." It is extremely doubtful that the Legislature would have so carefully engrafted due process provisions into the bill if it had no intention of allowing aggrieved parties to seek judicial review of zoning decisions. Indeed, several provisions of LLUPA specifically provide for judicial review. In addition to sections 67-6519 and 67-6521, both of which have been previously mentioned, judicial review is provided for in Idaho Code § 67-6520, which allows for the appointment of hearing examiners where authorized by local ordinance. That section allows hearing examiners to consider applications for subdivision, special use and variance permits, as well as "requests for zoning district boundary changes which are in accordance with the plan." *See* I.C. § 67-6520. The statute provides that the decision or recommendation of the hearing officer shall specify, among other things, "the actions, if any, that the applicant could take to obtain a permit or zoning district boundary change in accordance with the plan." *Id.* An applicant who is denied a permit or who is aggrieved by a decision may seek judicial review. *Id.* Is there any reason why a person aggrieved by a hearing officer's decision on a zoning district boundary change should be able to obtain judicial review but persons aggrieved by a downzone or upzone decision of a county commission cannot obtain such review? Certainly, the Legislature could not have intended such a logic-defying result.

A decision approving or denying a zoning request that would authorize a particular development proposal for a particular piece of property either authorizes or denies permission to so develop the property, the same as the approval or denial of an application for a written permit. In this case, Burns sought permission to develop its property in a particular fashion by way of a zoning change. With the change in the property's zoning status, the provisions of the zoning code, rather than a piece of paper called a "permit," would have granted the permission Burns sought. In other words, the written zoning code would be the "permit" authorizing the development desired by Burns. A permit by any other name is still a permit. We should not impose artificial barriers to consideration of such cases.

Justice BURDICK CONCURS.

11